THE STATE, EX REL. CINCINNATI POST, APPELLANT, v. SCHWEIKERT, COURT ADMR., APPELLEE.

[Cite as State, ex rel. Cincinnati Post, v. Schweikert (1988), 38 Ohio St. 3d 170.]

(No. 87-562—Submitted June 8, 1988—Decided August 15, 1988.)

*Baker & Hostetler, Bruce W. Sanford, David L. Marburger, Wood & Lamping* and *William R. Ellis,* for appellant.

*Arthur M. Ney, Jr.,* prosecuting attorney, and *Roger E. Friedmann,* for appellee.

H. BROWN, J. The issue we must decide is whether a report compiled by a court administrator from information contained in public records for the use of judges in sentencing and for consideration of prison population problems is a public record. We find that it is.

It is settled that relator, to secure a writ of mandamus, must demonstrate (1) a clear legal right to the relief prayed for; (2) respondents are under a clear duty to perform the acts; and (3) relator has no plain and adequate remedy in the ordinary course of law.

## I

The records being sought are compilations, "work product" as the appellate court characterizes them. Our first question is whether the type of records being sought is subject to disclosure under the Public Records Law.

R.C. 149.43(A) defines "public record" as:

"* * * [A]ny record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, except medical records, records pertaining to adoption, probation, and parole proceedings, records pertaining to actions under section 2151.85 of the Revised Code and to appeals of actions arising under that section, records listed in division (A) of section 3107.42 of the Revised Code, trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law."

"Record" is defined in R.C. 149.011(G) as:

"* * * [A]ny document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."

The Public Records Law imposes a duty upon the custodian of government records to allow any person to inspect them. R.C. 149.43(B). The Act represents a legislative policy in favor of the open conduct of government and free public access to government records. As we noted in *Dayton Newspapers, Inc.* v. *Dayton* (1976), 45 Ohio St. 2d 107, 109, 74 O.O. 2d 209, 211, 341 N.E. 2d 576, 577:

" 'The rule in Ohio is that public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people; therefore anyone may inspect such records at any time * * *.' "

The compilations at issue are created by public employees working under the supervision of the court administrator. The compilations contain statistics about individuals whom the government has imprisoned and convicted, or is about to imprison. The compilations document an operation of the Hamilton County justice system and they serve as a tool to be used in combating the Hamilton County jail overpopulation problem.

In R.C. 149.011(G), the General Assembly prefaces its definition of "records" with the term "includes," a term of expansion, not one of limitation or restriction. *In re Hartman* (1983), 2 Ohio St. 3d 154, 155-156, 2 OBR 699, 700, 443 N.E. 2d 516, 517; *Craftsman Type, Inc.* v. *Lindley* (1983), 6 Ohio St. 3d 82, 83, 6 OBR 122, 123, 451 N.E. 2d 768, 770.

R.C. 149.011(G) also provides that a record is "any" document that fits within the statutory description, re-

gardless of the document's "form or characteristic." That language encompasses documents such as the compilations at issue even if they may be characterized as work product. See *Dougherty* v. *Torrence* (1982), 2 Ohio St. 3d 69, 70, 2 OBR 625, 626, 442 N.E. 2d 1295, 1296; *Wachendorf* v. *Shaver* (1948), 149 Ohio St. 231, 236-237, 36 O.O. 554, 556-557, 78 N.E. 2d 370, 374.

Before July 1985, the Public Records Law defined a "public record" as any record that is "required to be kept" by any governmental unit. Arguably, this definition excluded preliminary work product because such material may not be "required to be kept" until it reaches its final stage or official destination. However, in July 1985, the General Assembly changed the definition of public record, by eliminating the words "required to be [kept]" and substituting the words "is [kept]" (141 Ohio Laws, Part II, 2761, 2774).

Further, the law's public purpose requires a broad construction of the provisions defining public records. Because the law is intended to benefit the public through access to records, this court has resolved doubts in favor of disclosure. See the more comprehensive discussion by Justice Wright in *State, ex rel. Natl. Broadcasting Co.,* v. *Cleveland* (1988), 38 Ohio St. 3d 79, 526 N.E. 2d 786. See, also, *Dayton Newspapers, Inc., supra.*

In light of the law's broad language and our construction of it, the compilations sought by the Post are public records even if they are work product in the sense that an effort has been made to bring together informa-tion from a variety of sources. See *State, ex rel. Natl. Broadcasting Co., supra.* See, also, *Beacon Journal Pub. Co.* v. *Stow* (Aug. 7, 1985), Summit App. No. 12058, unreported, affirmed (1986), 25 Ohio St. 3d 347, 25 OBR 399, 496 N.E. 2d 908.[1]

It is significant the so-called "work product" of Schweikert is a compilation of factual matter gleaned from public records. The United States Supreme Court has ruled that the work-product exemption in the federal Freedom of Information Act, Section 552(b)(5), Title 5, U.S. Code, does not apply to factual material. *Environmental Protection Agency* v. *Mink* (1973), 410 U.S. 73, 89; accord *Bristol-Myers Co.* v. *Federal Trade Comm.* (C.A. D.C. 1970), 424 F. 2d 935, 939, certiorari denied (1970), 400 U.S. 824 (factual material cannot be "cloaked in secrecy" under the guise of the work-product exemption).

In a sense most public records involve some "work product." In the context of the Public Records Law, the infusion of the work-product concept brings more confusion, than it does guidance, to a resolution of the issues that are pivotal to the question of disclosure. The law itself does not exempt compilations or derivations of information contained in public records. Frequently, governmental agencies make such compilations, as for example in election statistics, budget reports and other instances which readily come to mind without recitation. The law does not require members of the public to exhaust their energy and ingenuity to gather information which is already compiled and

---

[1] Ohio's Public Records Act contains no exemption for work product or preliminary papers. The General Assembly could have adopted a provision similar to Rhode Island's statutory exemption for "working papers and work products." R.I. Gen. Laws, Section 38-2-2(d)(11). See, also, *Legislative Joint Auditing Committee* v. *Woosley* (Ark. 1987), 722 S.W. 2d 581, 583.

organized in a document created by public officials at public expense.

## II

In the court of appeals, Schweikert argued that the Post is not entitled to a writ of mandamus because it did not sue the Hamilton County judges, who are ultimately responsible for the operation of the courts. The court of appeals ruled that it could not order the release of any compilations delivered to the judges because the Post did not join the judges as respondents.

The Public Records Law imposes its duty of disclosure on "a person responsible for public records." R.C. 149.43(B). The law does not require that the action be brought against the person *ultimately* responsible for the records, but requires suit against *a person responsible for them*. Where a particular official has a duty imposed by law to oversee public records, that official is "a person responsible" for those records under R.C. 149.43(B). *State, ex rel. Mothers Against Drunk Drivers,* v. *Gosser* (1985), 20 Ohio St. 3d 30, 20 OBR 279, 485 N.E. 2d 706, paragraph two of the syllabus. Schweikert is such an official.

Accordingly, we hold that a report prepared by a court administrator from factual information contained in public records is a public record subject to disclosure under the Public Records Law even though such compilations are made for the use of judges in sentencing. The Post is entitled to examine all completed documents entitled "Judges Report on Prisoner Population—Sentenced Individuals" and "Judges Report on Prisoner Population—Pre-Trial and/or Pre-Sentenced Individuals."

The judgment of the court of appeals is reversed and the writ prayed for is allowed as hereinabove set forth.

*Judgment reversed
and writ allowed.*

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS and WRIGHT, JJ., concur.

HOLMES, J., dissents.

HOLMES, J., dissenting. Because I believe the reports requested by the complainant here are not "public records" within the purview of R.C. 149.43, and because in any event respondent Schweikert was not the appropriate person responsible for making such reports available to the public, I would affirm the court of appeals' denial of the writ of mandamus below.

The position held by Schweikert is not technically a "public office" as that term is defined in R.C. 149.011(A). The court administrator is a discretionary employee of the judges of a county having a population in excess of three hundred thousand persons, who serves under the direction and supervision of such judges and assumes only such duties as are delegated to him by them. R.C. 2301.12(E). The position of court administrator was established to assist the judges in the performance of *the judges'* duties. It was not established for its own independent exercise of any function of government; rather, the office of municipal or common pleas judge was established for that purpose. Thus, even though the "Judges Report on Prisoner Population" was arguably a "record" for purposes of R.C. 149.011(G), it was not "kept by any public office," as contemplated by R.C. 149.43(A)(1), unless and until it was presented to and adopted or ratified by the judges (the public office) themselves. As pointed out by the court of appeals below, "until the report is lodged in the judges' hands, it is not, in fact, a report. Before it is handed up to the jurists, it is nothing more than a concentration, in transit, of bits and pieces extracted from other documents, records and reports."

The reports requested herein com-

prised a compilation of data from several sources and were designed to assist each judge in determining the length of incarceration or, alternatively, the conditions of release on bond, of each sentenced individual appearing before such judge. The form of such reports was subject to the review of the judges using them, and Schweikert stated in his deposition that the forms went through several changes before the judges received them, and continued to be changed. Repeated, intrusive public exposure to such low-level administrative adjustments could well delay production of the final product which is actually used by the judges. "Although a well-informed electorate is the cutting edge of a representative form of government, it does not necessarily follow that unbridled public excursions into every nook and cranny of day-to-day administrative functions best hones this cutting edge when balanced against the ever-present risk of impairing administrative efficiency without commensurate benefits." *Tribune Pub. Co.* v. *Curators of the Univ. of Missouri* (Mo. App. 1983), 661 S.W. 2d 575, 587.

Furthermore, even assuming that the requests by the Cincinnati Post here were of reports approved and used by the judges themselves, and thus arguably "public records," its complaint in mandamus fails to name "a person responsible for" such records—the judges themselves. R.C. 149.43(B). Although the court administrator here designed the form of the report and continued to hone it to the judges' specifications, he did not individually review all the reports or retain in his office a copy of each report, but merely distributed the reports to the judges as they were generated biweekly by the Jail Population Review staff. Unlike the clerk of courts, who is required by R.C. 1901.31(E) to maintain and supervise all documents used by the court in its decision-making capacity, *State, ex rel. Mothers Against Drunk Drivers,* v. *Gosser* (1985), 20 Ohio St. 3d 30, 20 OBR 279, 485 N.E. 2d 706, the court administrator is not required by any statute to keep or maintain the records at issue herein. Just as the position held by Schweikert is not a "public office," neither has he been delegated the task of being the person responsible for these records.

In sum, since relator Cincinnati Post has demonstrated, in my view, neither a clear legal right to production of these records from the court administrator nor a clear legal duty upon the administrator to produce such documents, I must respectfully dissent from the majority's allowance of the writ of mandamus in this case.