CBS, INC., Plaintiff-Appellant, v. CECIL A. PARTEE, State's Attorney of Cook County, Illinois, Defendant-Appellee.

First District (6th Division)   No. 1—89—0801

Opinion filed May 11, 1990.

---

938

Richard J. O'Brien and Lisa A. Hausten, both of Sidley & Austin, of Chicago (R. Bryan Hatchett, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Joan S. Cherry and Susan Condon, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE EGAN delivered the opinion of the court:

This appeal requires us to decide whether the race of a public employee, as recorded in a personnel file, is subject to disclosure under the Illinois Freedom of Information Act (FOIA) (Ill. Rev. Stat. 1987, ch. 116, par. 201 *et seq.*). In dismissing the complaint of CBS, Inc., against the State's Attorney of Cook County, the trial judge held that it was not.

In January 1989 the plaintiff requested the following information from the State's Attorney: (1) the names of all assistant State's Attorneys; (2) the race of each assistant State's Attorney; (3) the names of the "First Chair" assistant State's Attorneys; (4) the names of the assistant State's Attorneys in supervisory positions to be identified by title and department; and (5) the most recent salaries of each assistant State's Attorney and the dates of hire.

The defendant gave the plaintiff the names, titles, most recent salaries and the dates of hire of all assistant State's Attorneys but refused to identify any assistant State's Attorneys by race. The material given by the defendant to the plaintiff did not identify the names of the "First Chairs" requested. It is the general practice of the State's Attorney of Cook County to assign two or more assistant State's Attorneys to one criminal court judge for an indefinite period. Frequently, one assistant State's Attorney will be superior in authority to the other assistant State's Attorneys assigned to the same judge. We have been informed in oral argument that the plaintiff's description of "First Chair" refers to the superior assistant State's Attorney. The plaintiff makes no issue here of the failure to provide the names of the "First Chair" assistant State's Attorneys.

On March 7, 1989, the plaintiff filed a complaint seeking injunctive relief mandating the disclosure by the defendant of "the number of minority assistant State's Attorneys; the positions and titles of the minority assistant State's Attorneys; and the names of the minority assistant State's Attorneys." The judge allowed the defendant's motion to dismiss on the ground that the complaint failed to state a cause of action.

■ Section 1 of the FOIA (Ill. Rev. Stat. 1987, ch. 116, par. 201) enunciates the public policy of this State to be that all persons are entitled to full and complete information regarding the affairs of government and the acts and policies of public officials and public employees. The Act itself cautions, however, that it is not intended to be used to violate individual privacy. In brief, the defendant's position is that providing the plaintiff with the information sought would be a violation of the individual privacy of the assistant State's Attorneys.

■ This case hinges on the interpretation of section 7 of the FOIA (Ill. Rev. Stat. 1987, ch. 116, par. 207), which provides, in part, as follows:

"The following shall be exempt from inspection and copying:
\*\*\*

(b) Information which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy, unless such disclosure is consented to in writing by the individual subjects of such information. The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy. Information exempted under this subsection (b) shall include but is not limited to:
\*\*\*

(ii) personnel files and personal information maintained with respect to employees, appointees or elected officials of any public body or applicants for such positions[.]"

The defendant argues that the information sought is contained in personnel files and that any information contained in a personnel file is *per se* exempted from disclosure under section 7(b)(ii). We are aware that some appellate districts disagree on whether any exemption under section 7(b) may be considered a *per se* exemption. (Compare *Copley Press, Inc. v. City of Springfield* (4th Dist. 1986), 143 Ill. App. 3d 370, 493 N.E.2d 127, and *Staske v. City of Champaign* (4th Dist. 1989), 183 Ill. App. 3d 1, 539 N.E.2d 747, with *City of Monmouth v. Galesburg Printing & Publishing Co.* (3d Dist. 1986), 144 Ill. App. 3d 224, 494 N.E.2d 896, and *Margolis v. Director of Department of Revenue* (1st Dist. 1989), 180 Ill. App. 3d 1084, 536 N.E.2d 827.) In *Margolis* the First Appellate District expressly rejected the *per se* exemption rule of *Copley Press* and held that the courts were to apply a balancing test in construing section 7(b).

■ None of the Illinois cases which have decided the question of *per se* exemptions involved personnel files. One Federal case did involve personnel files; and although we are not bound by the holding of the Federal court, we may look to that decision, since the Illinois statute closely parallels the Federal FOIA. (*Griffith Laboratories U.S.A. v. Metropolitan Sanitary District* (1988), 168 Ill. App. 3d 341, 522 N.E.2d 744.) In *Department of Air Force v. Rose* (1976), 425 U.S. 352, 48 L. Ed. 2d 11, 96 S. Ct. 1592, information was sought from the United States Air Force concerning disciplinary systems and procedures. The Air Force refused to give certain information on the ground that the information was contained in personnel files, which under the Federal statute, like the Illinois FOIA, were expressly ex-

empted. The Supreme Court rejected the Air Force's argument and included this observation:

> "Congressional concern for the protection of the kind of confidential personal data usually included in a personnel file is abundantly clear. But Congress also made clear that nonconfidential matter was not to be insulated from disclosure merely because it was stored by the Agency in its 'personnel' files. Rather, Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.' " 425 U.S. at 372, 48 L. Ed. 2d at 27, 96 S. Ct. at 1604.

■ We believe the reasoning of the Supreme Court in *Department of Air Force v. Rose* is applicable here. To hold that all information contained in a personnel file is exempt from public disclosure simply because it is in a personnel file would permit a subversion of the broad purposes of the Act. (See also *Family Life League v. Department of Public Aid* (1986), 112 Ill. 2d 449, 457-58, 493 N.E.2d 1054, 1058.) Our conclusion is buttressed by section 8 of the Act (Ill. Ann. Stat., ch. 116, par. 208 (Smith-Hurd Supp. 1989)), which provides that "[i]f any public record that is exempt from disclosure under Section 7 of this Act contains any material which is not exempt" the public body shall delete the exempt material and make the rest of the information available. Section 8 includes all public records exempted from disclosure and makes no exception of personnel records. It appears inescapable to us that the legislature recognized that some matters in personnel records may be discoverable. We note that the defendant has made available the names, salaries, supervisory titles and dates of hire of all the assistant State's Attorneys. All that information is contained in personnel files and, we judge, was properly disclosed.

We turn now to the alternative argument of the defendant that the disclosure of racial information constitutes a clearly unwarranted invasion of the personal privacy of the assistant State's Attorneys.

■ The State's Attorney is required by Federal law to keep records for the completion of a report to be filed annually with the Equal Employment Opportunity Commission (EEOC). (29 C.F.R. §§1602.30, 1602.32 (1989).) That report contains the number of employees who are classified into five separate racial and ethnic groups: blacks, American Indians (including Alaskan Natives), Asians (including Pacific Islanders), Hispanics (including persons of Mexican, Puerto Rican, Cuban, Central or South American or other Spanish origin or culture regardless of race) and whites other than Hispanics. Neither party was

certain of the procedure followed by those who interviewed prospective assistant State's Attorneys in determining racial identification. The attorney for the defendant informed us that the determination was made by visual or "anecdotal" examination. The attorney for the plaintiff told the trial judge that the designation of the employees' racial category would be made by the person interviewing the employees and would be based on a "sight-check" by the interviewer or the interviewer could "request that the particular employee[s] indicate which of the various categories that they fall within." On this question the EEOC Compliance Manual is instructive; it is also probative for reasons we will discuss later. The pertinent provisions of the manual are as follows:

"Although identification of race, sex, and ethnic status is an essential factor in determining compliance with various equal employment opportunity laws, an individual cannot be forced to identify him/herself by race, sex, or ethnic group. However, an exception to this general principle can be made where the information regarding race, sex, or ethnic group is necessary to determine an individual's or employee's eligibility to receive a benefit or to determine the amount of the benefit to which such person may be entitled.
 \*\*\*

Self-identification is the preferred method of obtaining information necessary to identify an individual by race, sex, or ethnic group. Where information is not provided by an individual that indicates affiliation with a race, sex, or ethnic group, the person requesting the information should, where possible, secure and record the information through observation.

Note, the person attempting to secure information regarding race, sex, or ethnic affiliation should not second guess or in any other way change a self declaration made by an applicant or employee as to race, sex, or ethnic background. An exception to this rule can be made where the declaration by the applicant or employee is patently false." EEOC Compliance Man. (CCH) par. 5403, §632.3(b)(2)(iii), at 4316 (Mar. 1987).

The report made to the EEOC contains only the aggregate numbers in each category; it does not contain a racial designation for each separate assistant State's Attorney. The information provided in the report was made available to the plaintiff, but the plaintiff deemed that information insufficient.

 ■ The plaintiff's argument in the trial court was that the race of all assistant State's Attorneys is self-evident; therefore, all assistant

State's Attorneys cannot reasonably expect that their race would be a matter of personal privacy; and, therefore, disclosure of their race would not be an invasion of personal privacy. The heart of the syllogism is the premise that the race of each assistant State's Attorney is self-evident. It is a premise that the trial judge did not accept, and neither do we. Significantly, the plaintiff's attorney recognized that the person interviewing an assistant State's Attorney made the racial designation by a "sight-check" *or* by requesting the information from the employee. Race, although often apparent, is not always a "self-evident" characteristic. (See *People v. Phillips* (1989), 186 Ill. App. 3d 668, 671 n.1, 542 N.E.2d 814, 816 n.1. "The record shows that the trial judge and the attorneys were not even sure of the exact racial composition of the jury. Apparently, the race of one of the jurors was not visually discernible.") Judging from the EEOC Compliance Manual, experience has shown that interviewers are often unable to determine race by visual examination. To illustrate further the uncertainty of the racial classification of the required records, we point out that EEOC regulations require that persons of any "Spanish origin or culture" shall be designated as Hispanic *"regardless of race."* (Emphasis added.) 29 C.F.R. §1607.4 (1989).

■ Moreover, although the race of assistant State's Attorneys may be apparent in most cases, their occupation is not apparent to anyone other than those who deal with them professionally. Thus, even if we were to assume that the race of all assistant State's Attorneys was apparent to those who deal with them in their professional capacities, that does not mean that the assistant State's Attorneys have no reasonable expectation that a compilation of their respective names and races will not be disclosed to the public at large. The fact that information "is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information." (*United States Department of Justice v. Reporters Committee for Freedom of the Press* (1989), 489 U.S. 749, 770, 103 L. Ed. 2d 774, 794, 109 S. Ct. 1468, 1480.) This is especially true in the setting in which this case arose. The then State's Attorney, Richard M. Daley, was a candidate for mayor of Chicago, and the question of the racial composition of his office became a political issue. It is not unreasonable to assume that many assistant State's Attorneys did not want their names and races to be drawn publicly into a political dispute. Again judging from the EEOC Compliance Manual, experience has shown that some persons do not want to disclose their race, *even to the interviewer*.

In *Reporters Committee*, the court quoted from several sources in

explaining the meaning of "privacy":

> "The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others. \*\*\* [E]ven if he has chosen to give them expression, he generally retains the power to fix the limits of the publicity which shall be given them." 489 U.S. at 763 n.15, 103 L. Ed. 2d at 789 n.15, 109 S. Ct. at 1476 n.15, quoting Warren & Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 198 (1890-1891).

> "Privacy, in my view, is the rightful claim of the individual to determine the extent to which he wishes to share of himself with others. \*\*\* It is also the individual's right to control dissemination of information about himself." 489 U.S. at 764 n.16, 103 L. Ed. 2d at 790 n.16, 109 S. Ct. at 1476-77 n.16, quoting A. Breckinridge, The Right to Privacy, 1 (1970).

> "Privacy is the claim of individuals \*\*\* to determine for themselves when, how, and to what extent information about them is communicated to others." 489 U.S. at 764 n.16, 103 L. Ed. 2d at 490 n.16, 109 S. Ct. at 1477 n.16, quoting A. Westin, Privacy and Freedom, 7 (1967).

■■■ It is our holding, therefore, that it cannot be said, as a matter of law, that the assistant State's Attorneys, or any public employees, for that matter, have no reasonable expectation that their racial identification will not be made the subject of a public debate. To the contrary, they have a reasonable expectation that they will have some say as to "when, how or to what extent [such] information about them is communicated to others." (*Reporters Committee*, 489 U.S. at 764 n.16, 103 L. Ed. 2d at 490 n.16, 109 S. Ct. at 1477 n.16.) It is also our holding that the judge's finding that the dissemination of the information sought by the plaintiff would be an invasion of privacy is not against the manifest weight of the evidence. Whether it constituted a "clearly unwarranted invasion of privacy" depends on the weighing of other factors which will be discussed later.

■■■ In this court the plaintiff appears to have deviated slightly from the position it took in the trial court. It now says that race is a self-evident physical characteristic for a "vast majority of people." The plaintiff now concedes that there may be some assistant State's Attorneys whose race is not obvious; but, the plaintiff argues, the privacy of those few must be surrendered for the overall public good—the public good being the public's right to know whether the elected State's Attorney is complying with laws involving discrimination in hiring and promotions. That the rights of the minority must be sacrificed because

the majority may not assert them is an argument that we cannot accept. Nor can we accept the plaintiff's argument that by accepting public employment the assistant State's Attorneys yielded all right to privacy. The plaintiff conceded that disclosure of the religious affiliation or marital status of an assistant State's Attorney would be protected from disclosure, but we fail to see why they might not be disclosed, if we accept the plaintiff's argument that public employment established a waiver of any right of privacy. In the *Department of Air Force v. Rose* (1976), 425 U.S. 352, 48 L. Ed. 2d 11, 96 S. Ct. 1592, the plaintiff sought case summaries of disciplinary proceedings against individual cadets. The Supreme Court held that the case summaries, *from which the names of the individual cadets had been deleted*, were discoverable under the Federal FOIA. No one ever suggested that the cadets, by accepting appointment to the Air Force Academy and thereby becoming public employees, surrendered their right to privacy.

Both sides agree that no reported case is factually in point, but both refer to several cases which deal with disclosure of racial information. The principal case relied on by the defendant is *Bowie v. Evanston Community Consolidated School District No. 65* (1989), 128 Ill. 2d 373, 538 N.E.2d 557. In *Bowie,* the plaintiff sued the school district under the FOIA seeking the disclosure of test scores for students from certain years, grades and schools within the district and a list of education programs. The test scores were to designate the race of each student but not the name or sex of the student. The position of the defendant was that disclosure of the information was barred by the Illinois School Student Records Act (Ill. Rev. Stat. 1985, ch. 122, par. 50—1 *et seq.*).

The school district then released a report summarizing the students' performance on the tests by school, grade and race but not the individual scores of the students. The appellate court reversed the dismissal of the complaint and held that the plaintiff's request that the results be "masked" and "scrambled" was proper since the individual students could not then be identified. The supreme court agreed with the reasoning of the appellate court but remanded the case to the trial court to determine whether or not compliance would be unduly burdensome or whether there were so few students of one race in the class that disclosure of the test results by race would result in the students' identification. The *Bowie* case is not in point because no one ever claimed that the individual students should be identified by race.

The defendant has also cited other cases which held that the identification of a person by race was improper. Those cases involve situations where the racial identification was made in an attempt to exclude

minority participation; obviously, they are not in point.

The plaintiff has cited a number of cases which involve discovery orders in racial discrimination suits. (See, *e.g., Garrett v. City of San Francisco* (9th Cir. 1987), 818 F.2d 1515.) Those cases do not assist us. Apart from the fact that the information sought in each case was deemed necessary to assist the plaintiff to prove his case of racial discrimination, we note that discovery orders are subject to protective limitations. To illustrate the court's power to control dissemination of information, in *Washington Post Co. v. Minority Business Opportunity Comm'n* (D.C. App. 1989), 560 A.2d 517 (which did not involve a discovery order), the court of appeals ordered the trial court to examine the records *in camera*, to consider a number of factors, including a claim of privilege, and to make a judgment as to what material should be disclosed. Moreover, what may be subject to disclosure under discovery rules is not necessarily disclosable under the Freedom of Information Act. *Federal Trade Comm'n v. Grolier Inc.* (1983), 462 U.S. 19, 76 L. Ed. 2d 387, 103 S. Ct. 2209.

The plaintiff has cited two cases which involved the question of race, *Washington Post Co.* and *State ex rel. Cincinnati Post v. Schweikert* (1988), 38 Ohio St. 3d 170, 527 N.E.2d 1230. In *Washington Post*, the requested materials related to 15 companies which sought to participate as local minority business enterprises in the District of Columbia's affirmative action "set-aside" program. The defendant and two businesses which intervened in the trial court contended that the information sought was exempt because its disclosure would significantly impair the firms' competitive position. The court of appeals held that it was "not persuaded that disclosure of the race, *per se*, of the principals of an enterprise would lead to competitive injury." (*Washington Post*, 560 A.2d at 523.) No claim of individual privacy was made, and, more important, racial identification was necessary to determine whether a party could participate in the program. In *Cincinnati Post*, the plaintiff sought reports which were lists of individuals who were in jail or who were about to be sentenced. The lists identified the individuals, in part, as to sex, race and age. The defendant, a court administrator, resisted disclosure on the ground that the records sought were his "work product." Again, no claim of individual privacy was made.

■■ In determining whether the information requested here should be disclosed, "a court must balance the public interest against the interest [the legislature] intended [section 7(b)(ii)] to protect." (*Reporters Committee*, 489 U.S. at 776, 103 L. Ed. 2d at 797, 109 S. Ct. at 1483; see also *Bowie*, 128 Ill. 2d at 381.) In striking that balance the court must consider four factors: (1) the plaintiff's interest in disclo-

sure; (2) the public interest in disclosure; (3) the degree of the invasion of personal privacy; and (4) the availability of alternative means of obtaining the requested information. *Margolis v. Director of Department of Revenue* (1989), 180 Ill. App. 3d 1084, 536 N.E.2d 827.

With respect to the first factor, the plaintiff concedes, under the compulsion of *Reporters Committee*, that news media do not have any special interest that is not shared by any other member of the public. (*Reporters Committee*, 489 U.S. at 771, 103 L. Ed. 2d at 794-95, 109 S. Ct. at 1480-81.) On the other hand, a court should not ignore the reality that disclosure to the plaintiff means potentially far greater dissemination of the information than if it were given to a member of the public.

The next factor—the public interest in disclosure—must be considered in light of the plaintiff's concession that the information it seeks is in no way relevant in determining whether the assistant State's Attorneys are performing their duties or whether the defendant is performing his duty as the county's chief legal officer. Rather, the plaintiff maintains, it is entitled to the information to determine whether the information provided by the State's Attorney to the EEOC is accurate; in short, to determine whether the defendant told the EEOC the truth and thereby to determine whether the State's Attorney is guilty of discriminatory practices.

A presumption exists that a public officer will act in accordance with the law. (*Taylor v. County of St. Clair* (1974), 57 Ill. 2d 367, 312 N.E.2d 231.) Consequently, it is presumed that the defendant is in compliance with the anti-discrimination laws, and it is presumed that the defendant provided accurate information to the EEOC. Whether the defendant is in compliance with the law and whether the information he provides to the EEOC is accurate are subject to review by the EEOC itself. "To the extent that the [EEOC] believes a report is incorrect, §709(c) of Title VII and 29 C.F.R. §1602 implicitly authorizes [*sic*] the [EEOC] to make an inquiry into the accuracy of the report." (EEOC Compliance Man. (CCH) par. 121, at 235 (Aug. 1988).) It is presumed that the EEOC itself is acting in accordance with its duties. Under all these circumstances, we believe we must strain to find that the public is interested in acting as still another watchdog to determine whether the State's Attorney is complying with anti-discrimination requirements in the operation of his office, especially since no proof of failure to comply has been offered.

The next factor is the degree of the invasion of personal privacy. For the reasons we have already advanced, we judge that the record supports a finding that publication of the names and races to-

gether of the individual assistant State's Attorneys could constitute a substantial invasion of personal privacy.

■■ The last factor—the availability of alternative means of obtaining the requested information—has been subject to contrary views on the part of the plaintiff. It informed us in its opening brief that the court "may in its balancing process, consider the extent to which the requested information is otherwise available." However, when the point was raised in oral argument, the plaintiff's attorney referred us to a case, cited in its reply brief, *State ex rel. Cincinnati Post v. Schweikert* (1988), 38 Ohio St. 3d 170, 527 N.E.2d 1230. In that case the court said that the "law does not require members of the public to exhaust their energy and ingenuity to gather information which is already compiled and organized in a document created by public officials at public expense." (38 Ohio St. 3d at 173-74, 527 N.E.2d at 1233.) We do not construe *Cincinnati Post* to mean that the availability of other sources of the information sought may not be considered; it means that the fact that other sources are available is not conclusive.

■■ We acknowledge, however, that the question of whether other sources of information are available is not susceptible of an easy answer. The only other source appears to be the assistant State's Attorneys themselves. Section 7(b)(ii) expressly provides that exempt information may be disclosed if "such disclosure is consented to in writing by the individual subjects of such information." (Ill. Rev. Stat. 1987, ch. 116, par. 207(b)(ii).) We can only speculate whether the assistant State's Attorneys would be willing to divulge the requested information, if asked to do so by the plaintiff. Of course, a refusal to divulge by a substantial number of assistants would fortify the defendant's argument that the assistant State's Attorneys have a reasonable expectation of privacy. In any event, based on the record before us, we are unable to determine whether this factor weighs in favor of the plaintiff or the defendant.

Considering the other three factors we have discussed, however, we cannot say that the trial judge abused his discretion in concluding that the information sought by the plaintiff would be an unwarranted invasion of privacy. For that reason, the judgment of the circuit court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and RAKOWSKI, J., concur.