[Cite as *Hurt v. Liberty Twp.*, 2017-Ohio-825.]

| JAMES HURT, et al. | Case No. 2016-00856-PQ |
|---|---|
| Requesters | Special Master Jeffery W. Clark |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| LIBERTY TOWNSHIP | |
| Respondent | |

{¶1} This action is based on public records requests for interview notes taken by a private person statutorily designated to carry out an official function: to investigate and prepare charges for removal of a township official. R.C. 505.38 *Appointment of firefighting personnel*, provides in division (A) that:

[Firefighters and the fire chief] shall continue in office until removed from office as provided by sections 733.35 to 733.39 of the Revised Code. To initiate removal proceedings, and for that purpose, the board shall designate the fire chief or a private citizen to investigate the conduct and prepare the necessary charges in conformity with those sections. * * *

{¶2} On March 21, 2016, the Board of Trustees ("Board") of respondent Liberty Township ("Township") passed Resolution #16-0321-11, "to designate Douglas Duckett to investigate the conduct of Fire Chief Tim Jensen and prepare the necessary charges pursuant to Section 505.38 of the Ohio Revised Code * * *." Requesters' Exhibit A. In the course of this investigation, Duckett created and maintained notes related to sixteen interviews of Township trustees, Township employees, and others (defined in the

Complaint at ¶ 5, 6 and 8 as the "Duckett notes").[1]  On April 26, 2016, he "reviewed notes of interviews and began outline of issues and completed draft of factual summary in report."  Requesters' Exhibit B.  On May 4, 2016, he "reviewed report against documents and notes from interviews; edited and revised first draft."  *Id.*  On May 5, 2016, he conducted "Final review of notes and documents; completed final edit of Report; transmitted report to attorney Edward Kim."  *Id.*  Duckett submitted the final copy of his report to Mr. Kim on May 10, 2016.  *Id.*  The Board then directed Duckett to prepare charges against Jensen, which he filed on June 6, 2016.  Trustee Eichhorn Affidavit at ¶ 5-6.

{¶3} Prior to the administrative hearing before the Board, Jensen's counsel filed a subpoena for the "notes Mr. Duckett took during the interviews of witnesses during his investigation."  Trustee Eichhorn Affidavit, ¶ 7-8.  The Board considered the subpoena, "and announced it was granting Mr. Bittner's subpoena and requiring Mr. Duckett to produce the notes he took during witness interviews to Mr. Bittner."  *Id.*, ¶ 10-11.  The individual trustees and the Township administrator assert in their affidavits that, other than the mechanical process of handing the subpoenaed notes to Jensen's counsel at the August 8, 2016 hearing, the Duckett notes were never in their individual physical possession, and were not introduced into evidence at the hearing, *e.g. Id.*, ¶ 12-15.

{¶4} On May 5, 2016, requester James Hurt made the first of his and requester Mark Gerber's public records requests to Township Administrator Matt Huffman for various items, including the Duckett notes.  Over the next three months, Huffman provided some of the requested items, but responded that the interview notes were kept by Duckett as personal records and therefore did not meet the definition of "records."

---

[1]The Log of Project Work in Duckett's Invoice to Liberty Township, Requesters' Exhibit B, reflects interviews conducted on March 24, 2016 with "Cathy Buehrer, Trustee Eichhorn, FF Chalaco Clark, and BC Bill Piwtorek," on March 25, 2016 with "BC Jim Reardon, FF Scott Simmons, Trustee Leneghan,and BC Duane Price," on March 29, 2016 with "Cathy Buehrer," on March 30, 2016 with "Trustee Thomas Mitchell and Township Administrator Matt Huffman," on April 5, 2016 with "Ryan Hanf, Mickey Smith, Jim Cirigliano, and Warren Yamarick, M.D.," on April 22, 2016 with "former Fiscal Officer Mark Gerber and Fire Chief Tim Jensen," and on April 25, 2016 with "Fire Chief Jensen."

Requesters' Exhibit E.  On September 2, 2016, Huffman sent an e-mail to Hurt relaying the Township legal counsel's advice that "[t]hose notes are not a public record since the Township does not have possession of those documents. The documents were never introduced as exhibits and are not in the record. They were given to Mr. Bittner as a result of a subpoena."  Requesters' Exhibit C.  On October 12, 2016, Hurt and Gerber sent a joint e-mail to both Huffman and Duckett, repeating their requests for the Duckett notes.  On October 13, 2016, Duckett sent an e-mail to Gerber that stated:

> You are incorrect as a matter of law that I am "holding public records on behalf of Liberty Township. . . ."
> Under the express terms of Section 149.43(A)(1) of the Ohio Revised Code, "Public record means records kept by *any public office*, including . . . township[s]. . . ." [Emphasis supplied.] I am not a "public office"; I am an attorney with a private law practice. My records are thus not "public records." This has nothing to do with attorney-client privilege; none of my records are public records by statutory definition.
> Accordingly, I am not providing any documents in response to your request. You need to focus your request on the public office, *i.e.*, Liberty Township.

{¶5} Requesters' Exhibit F.  On September 23, 2016, Township employee Cathy Buehrer provided Hurt with transcripts of the Duckett interviews of Jensen, and offered access to the audio recordings of those interviews.  Requesters' Exhibit G.

{¶6} On November 21, 2016, requesters filed a complaint against the Township under R.C. 2743.75 alleging denial of access to a public record in violation of R.C. 149.43(B), attaching copies of the original records requests and related correspondence.  Mediation was conducted between requesters and representatives of the Township.  On January 18, 2017, the Court was notified that the case was not resolved and that mediation was terminated.  On February 1, 2017, the Township filed its motion to dismiss and response to the complaint ("response").  The Township attached the affidavits of three Township trustees and the Township administrator.

{¶7} As amended by 2015 Sub. S.B. No. 321, R.C. 149.43(C) provides that a person allegedly aggrieved by a violation of division (B) of that section may either commence a mandamus action or file a complaint under R.C. 2743.75. In mandamus actions alleging violations of R.C. 149.43(B), case law provides that although the Public Records Act is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence." *State ex rel. Miller v. Ohio State Hwy. Patrol,* 136 Ohio St.3d 350, 2013-Ohio-3720, ¶ 14. As for actions under R.C. 2743.75 alleging violations of R.C. 149.43(B), neither party has suggested that another standard should apply, nor is another standard prescribed by statute. R.C. 2743.75(F)(1) states that such claims are to be determined through "the ordinary application of statutory law and case law * * *." Accordingly, the merits of this claim shall be determined under a standard of clear and convincing evidence. Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶8} The Township moves to dismiss the complaint on the grounds that: 1) the Duckett notes were created by a private individual not subject to R.C. 149.43; 2) the Duckett notes are personal notes falling outside of the definition of "public records," and 3) the Township has never possessed the records. In construing a motion to dismiss pursuant to Civ.R. 12(B)(6),[2] the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). Then, before the court may

---

[2] Although the rule is not cited, the motion appears to allege failure to state a claim for which relief may be granted, Civ.R. 12(B)(6).

dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.,* 42 Ohio St.2d 242, 245 (1975). The unsupported conclusions of a complaint are, however, not admitted and are insufficient to withstand a motion to dismiss. *Mitchell* at 193.

{¶9} I recommend overruling respondent's motion for the following reasons:

1. The complaint alleges that the requested documents were created and maintained by a third party engaged by the Township to perform the official function of initiating removal proceedings against a Township official. R.C. 505.38(A). The Township Resolution states that the investigation and preparation of charges were conducted as a delegation of what is otherwise the Township's own authority. Requesters' Exhibit A. The complaint sufficiently alleges that the designee was a party responsible for one of respondent's official functions, from whom respondent could access those records to satisfy its duty to provide copies upon request. *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990); *State ex rel. Cincinnati Enquirer v. Krings,* 93 Ohio St.3d 654, 657-660, 758 N.E.2d 1136 (2001).[3]

2. The complaint alleges that the requested notes memorialize sixteen interviews taken to investigate the conduct of a Township official. The notes were utilized to prepare a report, and to file charges, and were then retained by Duckett. At a hearing on the charges the notes were produced to the defendant in response to a subpoena. "Unless otherwise exempted, almost all documents memorializing the activities of a public office can satisfy the

---

[3] The question of whether Duckett was separately responsible to directly provide copies to a requester is not before this court, as the complaint names only the Township as a respondent. *Krings* at 660. For third party responsibility*, see Mazzaro* at 39.

definition of 'record.'" *State ex rel. Data Trace v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, ¶ 30, *quoting State ex rel. Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, at ¶ 20. This generally includes working papers and notes relied on in an investigation. *State ex rel. Gannett Satellite Network v. Petro*, 80 Ohio St.3d 261, 264, 685 N.E.2d 1223 (1997). Requesters sufficiently allege that the requested documents were "records" coming under the jurisdiction of the Township.

3. Requesters allege that Township officials have had possession of and reviewed at least some if not all of the Duckett notes. Affidavits of James Hurt and Mark Gerber, ¶ 4-5. Accepting these statements as true for the purpose of the motion to dismiss, and combined with requesters' allegation of Duckett's quasi-agency on behalf of the Township, Complaint, ¶ 3, requesters sufficiently allege that the requested records were both constructively possessed by the Township in the hands of its statutory contractor, *Mazzaro*, p. 39; *Krings,* pp. 657-660, as well as physically kept by the Township.

{¶10} I conclude that requesters have stated allegations that, if proven, may entitle them to relief under R.C. 2743.75 for denial of access to public records. I recommend that the Township's motion to dismiss be DENIED, and that this claim be determined on its merits.

{¶11} In considering a disputed claim to public records, the court must resolve any doubt in favor of access.

"The rule in Ohio is that public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people; therefore anyone may inspect such records at any time, subject only to the limitation that such inspection does not endanger the safety of the record, or

unreasonably interfere with the discharge of the duties of the officer having custody of the same." *Patterson v. Ayers*, 171 Ohio St. 369, 371 (1960).

{¶12} "The Public Records Act reflects the state's policy that 'open government serves the public interest and our democratic system.'" *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, ¶ 13, quoting *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, ¶ 20. "Consistent with this policy, we construe R.C. 149.43 liberally in favor of broad access and resolve any doubt in favor of disclosure of public records." *Id.*

{¶13} As an initial matter, the parties agree that the Township has provided requesters with the transcripts and audio recordings of the Jensen interviews, and the claim as it relates to those records is therefore moot. *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, ¶ 14. Further, with respect to possession of the Duckett notes, I find failure of proof by clear and convincing evidence that the notes, other than the transcripts and audio recordings of the Jensen interviews, have been or are physically kept by the Township. In their affidavits, requesters assert "to the best of [their] knowledge and belief" that the Township had possession of and reviewed "at least some if not all of the Duckett notes," without supporting detail. Respondent's affidavits assert, on personal knowledge, that they have not reviewed or possessed any of the Duckett notes, other than during transfer to Jensen's defense counsel. I find respondent's assertions more persuasive.

{¶14} In denying access to the remainder of the Duckett notes, respondent first asserts that the notes are "not records," and therefore not subject to the Public Records Act. This issue is subject to the same liberal construction as given to the Public Records Act itself. In *State ex rel. Data Trace v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, ¶ 30, the Court summarized well-established holdings:

> In *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, at ¶ 20, we recognized the expansive scope of the R.C. 149.011(G) definition of "records":

We previously have held that the General Assembly's use of "includes" in R.C. 149.011(G) as a preface to the definition of "records" is an indication of expansion rather than constriction, restriction, or limitation and that the statute's use of the phrase "any document" is one encompassing all documents that fit within the statute's definition, regardless of "form or characteristic." State ex rel. Cincinnati Post v. Schweikert (1988), 38 Ohio St.3d 170, 172-173, 527 N.E.2d 1230. There can be no dispute that there is great breadth in the definition of "records" for the purposes here. Unless otherwise exempted or excepted, almost all documents memorializing the activities of a public office can satisfy the definition of "record." State ex rel. Beacon Journal Publishing Co. v. Bond, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 13.

{¶15} R.C. 149.011(G) sets out a three-part definition of "records":

(G) "Records" includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

{¶16} The Duckett notes satisfy the first part of this definition, as "documents." The second part of the definition requires "records" to be items "created or received by *or coming under the jurisdiction of* any public office * * *. R.C. 149.011(G). The Duckett notes were not created or received by respondent, but they document a statutory process coming under the jurisdiction of the Township to initiate removal proceedings against an appointed official. R.C. 505.38(A). As background, when the mayor of a municipal corporation has reason to believe that a fire chief has been guilty of certain offenses, he shall immediately file charges for removal with the legislative authority. R.C. 733.35 to 733.39. When a township has reason to believe that a fire chief has been guilty of the same offenses, R.C. 505.38(A) provides that the board of trustees may designate a third party to investigate and file the same charges, in conformity with exactly the same process: "[T]he board shall designate the fire chief or a private citizen

to investigate the conduct and prepare the necessary charges in conformity with [sections 733.35 to 733.39 of the Revised Code]."[4]  For both municipal corporations and townships, the statutory process for removing a fire chief from office is a function coming under its jurisdiction, and the records documenting that function are axiomatically under the jurisdiction of the office.

{¶17} In this case, the Township recognized its own "authority to conduct an investigation and/or review of the operations of the operation and management of the Fire Department * * *," and delegated that authority to Duckett in its Resolution to Authorize Expenditure for Investigatory Review of Fire Department.  Requesters' Exhibit A.  The requested investigatory notes meet the second prong of the statutory definition of "records" because, in documenting the exercise of delegated authority of the Township, they "come under the jurisdiction of" the Township.  *Mazzaro* at 40.

{¶18} The third prong of the definition is that "records" must serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.  Respondent argues that the interview notes were taken only for Duckett's personal convenience, and did not in their own right document the organization, functions, policies, decisions, procedures, operations or other activities of the Township.  The Township cites *State ex rel. Pietrangelo v. Avon Lake*, 2016-Ohio-5725, Slip Opinion No. 2016 Ohio LEXIS 2289, *7, for the broad proposition that "personal notes taken by police officers during witness interviews are not public records." Response,   p. 9-10.  However, the Supreme Court made no such holding in *Pietrangelo*, finding instead that the "personal convenience" defense in that case had been contradicted by admissions that the type of notes requested were customarily retained for future reference, and that the notes contained more information than was transferred to the incident report.  In a section titled MOOTNESS, the Court declined to

---

[4] R.C. 505.38(A) also provides that a township board may designate the fire chief to investigate conduct and prepare charges, presumably when a subordinate member of the fire department is the subject.

rule on the disputed issue of the investigator's notes as "records," because destruction of the notes had precluded any order to produce. *Id.*, ¶ 15-20. Further, the Court's discussion of the issue reflected that a note's status as a record is dependent on the facts and circumstances in each case.

{¶19} The notes involved in other cases cited by respondent are also distinguished from the Duckett notes, by their limited function as transient vessels conveying information from an interview to an official form or interview report. In *Hunter v. Ohio Bureau of Workers' Comp.*, 10th Dist. Franklin No. 13AP-457, 2014-Ohio-5660, *appeal not allowed*, 2015-Ohio-2911, 2015 Ohio LEXIS 1881, BWC interviewers testified that their notes were used to compose a typewritten, official report of each interview, and because the handwritten notes were at that point of no further administrative value they were destroyed in accordance with the office's Transient Record retention schedule. *Id.*, ¶ 23-36. Notably, all of the separate typewritten interview reports *were* provided to the requester. *Id.*, ¶ 35. Similarly, in *State ex rel. Murray v. Netting*, 5th Dist. Guernsey No. 97-CA-24, 1998 Ohio App. LEXIS 4719 *3, "[t]he notes were personal papers of the interviewers, used to complete the evaluation forms, to which relator is entitled." In such cases, where the contents of handwritten notes are entirely or substantially preserved elsewhere, courts have found the notes to be non-records or, alternatively, transient records that may be disposed of when no longer of administrative value. In other cases, where the contents of handwritten notes were *not* identical to the final document prepared from them, courts have recognized the notes' status as separate records. *E.g.*, *State ex rel. Verhovec v. Marietta*, 4th Dist. Washington No. 12CA32,          2013-Ohio-5415, ¶ 30, *appeal not accepted*, 138 Ohio St.3d 1470, 2014-Ohio-1674. The Ohio Supreme Court addressed the mitigating significance of access to identical content in *State ex rel. Cranford v. Cleveland*, 103 Ohio St.3d 196; 2004-Ohio-4884, ¶ 19, basing its decision that requested notes were non-records on a finding, in part, that:

Moreover, as in *Steffen,* "neither litigants nor any other persons lose any information" as a result of holding that Ronayne's personal notes are not public records. *67 Ohio St.3d* at *441, 619 N.E.2d 688.* Ronayne [*sic, should be* Cranford] and his attorney were also present at the predisciplinary conference and could have taken their own notes during the conference or requested that it be transcribed. In fact, to the extent that Ronayne relied on his notes, he read most of them into the transcribed civil service commission hearing to which Cranford was afforded access.

{¶20} There is no indication that the entire or substantial contents of the Duckett interviews were preserved in other records provided to the requesters. The Duckett notes were not used for temporary transfer of information to an official form, and were not read into a hearing record.[5] The interview notes are apparently the underlying documentation of an investigation significantly based on sixteen interviews. The notes were kept rather than destroyed, and were produced pursuant to subpoena by the subject of the investigation, presumably to access information non-identical to the contents of Duckett's report. The interview notes in this case do not resemble the transient or form-specific notes in cases cited by respondent, but instead resemble freestanding law enforcement investigatory work product. *See, e.g.*, *State ex rel. Caster v. Columbus*, Slip Opinion No. 2016-Ohio-8394, ¶ 67, 2016 Ohio LEXIS 3066, *39 (including investigator's interview notes as investigative work product); *State ex rel. Dublin Sec. v. Ohio Div. of Sec.*, 10th Dist. Franklin No. 91AP-782, 1992 Ohio App. LEXIS 6794, *7, 1992 WL 394910, *reversed on other grounds*, 68 Ohio St.3d 426, 627 N.E.2d 993 (handwritten notes from interviews as investigatory work product). I conclude that the Duckett notes document an employment investigation that was an official function and procedure of the Township, and therefore meet the definition of "records" in R.C. 149.011(G).

{¶21} The Township's final argument is that it did not have control over Duckett or his notes, and therefore cannot be compelled to provide the requested records.

_____

[5] Respondent did not file the Duckett notes with the court *in camera,* and did not submit an affidavit from Duckett.

Analysis of this argument involves application of the term "person responsible for public records" in R.C. 149.43(B)(1) and (C)(1), also known as quasi-agency:

> "*R.C. 149.43(C) * * ** allows a mandamus action [or complaint under R.C. 2743.75] against *either* the governmental unit or the person responsible for a public record. In our view, the disjunctive used in *R.C. 149.43(C)* manifests an intent to afford access to public records, even when a private entity is responsible for the records." *Mazzaro* at 39 (emphasis original)*.*

{¶22} Therefore, "where (1) a private entity prepares records in order to carry out a public office's responsibilities, (2) the public office is able to monitor the private entity's performance, and (3) the public office has access to the records for this purpose, a relator in an R.C. 149.43(C) mandamus action is entitled to relief regardless of whether he also shows that the private entity is acting as the public office's agent." *Id; accord Toledo Blade v. Univ. of Toledo Found.*, 65 Ohio St.3d 258, 263, 602 N.E.2d 1159 (1992); *Krings* at 657-659.

{¶23} In *Krings*, a board of county commissioners contracted out its responsibility to build a sports stadium, using the board's statutory authority under R.C. 307.023. A public records request was made to the board administrator for financial records that existed only in the hands of contracted private entities, but the administrator refused to obtain the records from the private entities. The Court found that the administrator had access to the contractors' records, which documented a responsibility of the board, and should have made the records available using that access so that the requester did not have to deal with a third party. *Id.* at 659-660. The Court noted that these records of publicly funded proceedings were "within the jurisdiction of the board of county commissioners, regardless of whether those records were within the possession of the county, or the private entities." *Id.*

{¶24} Just as R.C. 307.023 authorized the board of county commissioners in *Krings* to contract with private persons for the construction of a sports stadium, R.C. 505.38 authorized the Township to designate a third party to conduct an investigation and file charges to initiate removal a fire chief. Requesters' Exhibit A, Resolution. The

investigation was a publicly funded proceeding. *Id.*, ¶ 4; Requesters' Exhibit B, Duckett's Detailed Billing. The statute, the Resolution, the affidavits of the township trustees and administrator, and Duckett's billing statement all support the characterization of Duckett's investigation as carrying out the Township's responsibility to investigate employees who commit certain conduct.

{¶25} With regard to the Township's ability to monitor this responsibility, the evidence shows that the Trustees, Administrator, and Attorney monitored the investigation by conferring repeatedly with Duckett, in person and by telephone, to review documents, plan interviews, debrief with client, revise interview outline based on concerns of Trustee Leneghan, discuss next steps, discuss procedural issues, prepare status updates, assist with briefing, and direct the filing of charges. *See* Requesters' Exhibit B; Eichhorn Affidavit, ¶ 5. The Township could and did monitor Duckett's performance.

{¶26} Whether a public office "has access to" records under its jurisdiction is not limited to records already in its possession. The question is instead whether the office *could have* accessed the records. Otherwise, a public office could conceal public records simply by declining to exercise its ability to access. *Krings* at 659. As discussed *supra*, pp. 8-9, the Duckett investigation and removal process came under the jurisdiction of the Board of Trustees, and the Township was thus responsible to maintain the records necessary to document that procedure. R.C. 149.40. The Board asserted control over and did access the notes when it ordered them disclosed to Jensen's counsel in its role as the administrative hearing panel. While the Township Trustees and Township Administrator testified that they had avoided physically possessing the Duckett notes, they did not testify that they did not have authority to

access the notes.[6] The Township has alleged no express legal prohibition to access of these records, by itself or others.[7]

{¶27} The quasi-agency case of *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990) is even more analogous to the case at bar. In *Mazzaro*, the State Auditor's office hired an independent certified public accountant (ICPA) to perform an audit for which the Auditor was responsible. The audit had to be conducted according to the Auditor's standards, procedures, and guidelines. *Id.* at 38. When a request was made for the ICPA's audit records, including his working papers and any personal notes, *Id.* at 37, the Auditor argued that he had not created or received the records in the ICPA's possession, and these records would be under his jurisdiction only if the ICPA had acted as his agent. *Id.* at 38. The Court disagreed, first noting the broad and inclusive definition of "records," and then finding that the Auditor,

> "either did or could have used Deloitte's records in furtherance of its responsibility to complete the Euclid biennial audit. Thus, we hold that the records are within the Auditor's jurisdiction and that he is subject to a writ of mandamus ordering him to make them available for inspection." *Id.* at 39.

{¶28} The Court dismissed any need to prove agency, stating, "Rather, we believe * * *, that the operative inquiry is whether Deloitte prepared the relevant records by reason of authority delegated by the Auditor." *Id.* The court stated in summary,

> We come to these conclusions because they are consistent with *R.C. 149.43(C)*, which allows a mandamus action against *either* the governmental unit *or* the person responsible for a public record. In our view, the disjunctive used in *R.C. 149.43(C)* manifests an intent to afford access to public records, even when a private entity is responsible for the records. [citations omitted] Indeed, in *State,*

---

[6] Trustee Eichhorn's statement in her affidavit at ¶ 13 ("Aside from the brief period of time when I held Mr. Duckett's notes after the Board of Trustees granted the subpoena, I never again had possession of or access to Mr. Duckett's notes."), in context asserts only the termination of "immediate access," and does not deny "authority to access," which is the relevant standard in *Mazzaro, et al.*

[7] Although Administrator Miller emailed requesters that Duckett's notes were subject to attorney-client privilege, respondent has waived that argument by not asserting it in its response. In any case, respondent presents no evidence that Duckett was either the Township's formal legal counsel, or was employed here to provide legal services ("This has nothing to do with attorney-client privilege, * * *." Requesters' Exhibit F, October 13, 2016 email from Douglas E. Duckett to Mark Gerber).

*ex rel. Recodat Co., v. Buchanan (1989), 46 Ohio St.3d 163, 165, 546 N.E. 2d 203, 205*, we expressed our concern that the public not be required to deal with third parties in order to gain access to public records.

Our conclusions also result from the broad construction of the definition of "public records" that our earlier decisions require. [citations omitted] Moreover, by construing *R.C. 149.011(G)* to include any material on which a public office could or did rely, our decision preserves the public's right of access to public records, regardless of where they are physically located, or in whose possession they may be.

**{¶29}** The Duckett interview notes were prepared by reason of authority delegated by the Township. The Township remained responsible for the investigation, charges, and hearing, and for the records documenting them. R.C. 149.40. Duckett's investigation had to be conducted according to the same statutes applicable to a municipal mayor and township fire chief, i.e., R.C. 733.35 to 733.39. The interview notes were used by Duckett to perform the Township's investigative and charging responsibilities, and the Township accessed and used the Duckett notes to provide the defendant with subpoenaed investigative work product during the administrative hearing. Where the identical investigation is conducted by a mayor or fire chief pursuant to R.C. 733.35 to 733.39, the status of the investigative interview notes as records under the jurisdiction and control of the municipality or township is readily apparent. This status is no less certain where the investigator is a statutory designee. Against this evidence of responsibility for and access to records documenting its direct and delegated responsibilities, the Township presents no evidence that it could not have accessed the records of the investigation, for evidence in its administrative hearing or for any other reason. Requesters have established respondent's ability to access the requested records, unrebutted by respondent other than by its bare denial.

**{¶30}** I conclude that requesters have shown by clear and convincing evidence, 1) that the requested investigatory interview notes were records prepared to document a responsibility of the Township, 2) that the Township was able to monitor the

designated investigator's performance, and 3) that the Township had access to the records for the purposes of the investigation, charging, and hearing. Under the reasoning in *Mazzaro* and *Krings*, the interview notes were public records kept by Duckett on behalf the Township, and subject to the Ohio Public Records Act. Requesters thus have a "right of access to these public records, regardless of where they are physically located, or in whose possession they may be." *Mazzaro* at 40*.*

{¶31} Finally, R.C. 149.43(B)(1) provides that "[i]f a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt." The Township may therefore redact any specific information within the Duckett notes that is a non-record, such as the home address of an employee, or that is specifically excepted, such as Social Security numbers. *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, ¶ 25; *State ex rel. Fant v. Enright*, 66 Ohio St.3d 186, 188 (1993); Sup.R. 44(C)(2)(b) and (H). Any such redaction would be subject to further judicial review.

{¶32} Upon consideration of the pleadings and attachments, I find that requesters have established by clear and convincing evidence that the Duckett notes are public records pursuant to R.C. 149.43(A). I further conclude that the failure of the Township to provide the Duckett notes in response to requesters' requests, in the absence of a valid exception to release, denied requesters access to a public record in violation of division (B) of section 149.43 of the Revised Code. Accordingly, I recommend that the court issue an order GRANTING requesters' claim, and which 1) directs the Township to provide requesters with the Duckett notes, and 2) provides that requesters are entitled to recover from the Township the costs associated with this action, including the twenty-five dollar filing fee. R.C. 2743.75(F)(3)(b).

{¶33} *Pursuant to R.C. 2743.75(F)(2), within seven business days after receiving this report and recommendation, either party may file a written objection with the clerk of the Court of Claims of Ohio. Any objection to the report and recommendation shall be specific and state with particularity all grounds for the objection.*

_____
JEFFERY W. CLARK
Special Master

cc:

James Hurt
2081 Bunty Station Road
Delaware, Ohio 43015

Mark Gerber
5212 Sheffield Avenue
Powell, Ohio 43065

David A. Riepenhoff
Stephanie L. Schoolcraft
400 South Fifth Street, Suite 200
Columbus, Ohio 43215-5095

**Filed February 22, 2017**
**Sent to S.C. Reporter 3/7/17**