COPLEY PRESS, INC., Plaintiff-Appellant, v. THE CITY OF SPRINGFIELD
*et al.*, Defendants-Appellees (Long Nine, Inc., Plaintiffs; Police Benevolent
and Protective Association Unit No. 5, Intervenor).

Fourth District   No. 4—93—0999

Argued July 19, 1994.—Opinion filed August 23, 1994.

GREEN, J., specially concurring.

Barry O. Hines (argued) and R. Kurt Wilke, both of Barber, Segatto,
Hoffee & Hines, of Springfield, for appellant.

James K. Zerkle (argued) and Robert M. Rogers, Corporation Counsel, of
Springfield, for appellee City of Springfield.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General (argued), of counsel), for appellee Department of State Police.

Ronald J. Stone, of Stratton, Dobbs & Nardulli, of Springfield, for Police Benevolent and Protective Association Unit No. 5.

Wayne M. Klocke, of Illinois Fraternal Order of Police Labor Council, of Countryside, and Robert J. Isaacson, of Sonnenschein, Nath & Rosenthal, of St. Louis, Missouri, for *amicus curiae*.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiff, Copley Press, Inc. (Copley Press), and other media organizations requested that the City of Springfield (City) and the Illinois State Police (State Police) release the file and summary compiled by the State Police during their investigation into allegations of sexual harassment against former Springfield chief of police Kirk Robinson. These requests were denied on the basis the investigative file was exempt from disclosure. Plaintiffs brought suit under the Illinois Freedom of Information Act (Information Act) (5 ILCS 140/1 *et seq.* (West 1992)) to compel public disclosure of the documents. Unit No. 5 of the Police Benevolent and Protective Association was allowed to intervene. On cross-motions for summary judgment, the trial court granted defendants' motion and denied plaintiffs' motion. Copley Press, alone, has appealed from that decision.

The events giving rise to the lawsuit began when a civilian employee of the Springfield police department (SPD) brought an internal sexual harassment complaint against the chief of police, Kirk Robinson. When news of the complaint, but not the identity of the complaining employee, became public knowledge, Springfield Mayor Ossie Langfelder immediately requested that the State Police conduct an internal affairs investigation into the alleged conduct attributed to Robinson. The State Police agreed to conduct a completely independent investigation and SPD was directed to cooperate fully and refrain from conducting its own internal affairs investigation.

After a three-month investigation, conducted by two State Police master sergeants, a file in excess of 1,000 pages had been compiled. On April 30, 1993, Terrence W. Gainer, Director of the State Police, provided Mayor Langfelder with a summary of the investigation and a copy of the entire investigative file. After reviewing these documents, Mayor Langfelder asked for and received the resignation of Robinson as chief of police. Upon his resignation, Mayor Langfelder

reassigned Robinson to the position of commander in the SPD. The fact of the resignation and demotion were made public by Mayor Langfelder.

After this public announcement, plaintiffs requested that the City release the entire file under the Information Act. The City denied the request citing various exemptions. The same request was then made of the State Police which, likewise, denied the request citing additional exemptions.

After filing suit, the various defendants and intervenor filed answers claiming that the entire report was exempt from disclosure under 12 separate provisions of the Information Act and common law. The parties filed cross-motions for summary judgment.

Attached to the motions were several affidavits, including that of Donald Kliment, commander of the Special Services Section (internal affairs) of SPD. His affidavit identified the written SPD policy on internal affairs' investigations, which directed that all files and reports compiled, as well as the identities of complainants and witnesses interviewed, were to be kept confidential.

The affidavit of Mayor Langfelder was also submitted. In it he averred:

"The investigative summary report contains the following information:

(a) the identity of the complainant;

(b) the identities of other witnesses, some of whom were employees of the City of Springfield who were interviewed by the State Police;

(c) a summary of the interview of the complainant;

(d) a summary of other witness interviews;

(e) personal information of a sexual nature;

(f) opinions as to the culpability of Kirk Robinson;

(g) opinions as to the credibility of the complainant and other witnesses;

(h) hearsay; and

(i) evaluation of evidence gathered by the State Police during the internal affairs investigation.

* * *

The investigative file contains the following information:

(a) the identity of the complainant;

(b) the identities of other witnesses, some of whom were employees of the City of Springfield who were interviewed by the State Police;

(c) the investigation transcripts of interviews with the complainant;

(d) the investigation transcripts and/or statement summaries of all witnesses interviewed during the internal affairs investigation; (e) personal information of a sexual nature; (f) opinions as to the culpability of Kirk Robinson; (g) hearsay statements; (h) evaluation of evidence gathered by the State Police during the internal affairs investigation; (i) medical information; and (j) private communications such as letters and cards between various witnesses interviewed."

Also attached was the affidavit of master sergeant John King, one of the two State Police officers who conducted the investigation. Among the averments in King's affidavit were that in addition to the assurances of the City as to confidentiality of all interviewees who provided information to the State Police, "that most, if not all, of the interviewees expressed concerns of confidentiality before providing information. Said interviewees were assured of confidentiality by this affiant upon any and all expressions of concern regarding confidentiality."

In describing the contents of the file, King stated:

"In the course of the investigation a record thereof was compiled in the form of an investigative file comprised, for the most part, of transcripts of interviews with persons identified in the file who were asked to provide information with respect to allegations of sexual harassment against Kirk Robinson. The subject matter of those interviews includes descriptions of and opinions and rumors relating to personal and/or sexual relationships among, primarily, various members of the Springfield Police Department; allegations of particular acts of a sexual nature; and personal opinions with respect to the credibility, motives and competence of various interviewees. Also included in the file are copies of city and police department procedures for dealing with employment-related complaints or reports of sexual harassment, transcripts in which those procedures and the procedures followed in this particular case are described, personal notes or letters exchanged between individuals relating to incidents that were the subject of the investigation, written descriptions of incidents that were the subject of the investigation, medical information pertaining to complainant, and various personnel documents (e.g., time records) relating to individuals involved in incidents that were the subject of the investigation."

The affidavit concluded that many SPD witnesses were ordered to truthfully answer all questions put to them or be faced with disciplinary action by the SPD and none of the interviewees had

consented in writing to the disclosure of information concerning them in the investigative file compiled by the State Police or the summary report prepared by Director Gainer.

Pursuant to order of the trial court, the State Police submitted the entire file for an *in camera* inspection. After that review was completed and a hearing on the motions was held, the trial court denied, without comment or findings, plaintiffs' motion for summary judgment and allowed defendants' motion for summary judgment. By stipulation of the parties, the State Police investigative file was sealed by the trial court and delivered to this court for review on appeal. We have done so and conclude that material contained in the file is consistent with each of the averments made in the various affidavits submitted with defendants' motion for summary judgment.

At the outset we note that at the trial court level, the defendants collectively asserted 12 different statutory or common law exemptions from disclosure. In ruling on the motions for summary judgment, Judge Cadigan, as he did in *Muck v. Van Bibber* (1992), 223 Ill. App. 3d 830, 585 N.E.2d 1147, failed to make any findings or identify which of the 12 exemptions he was relying upon in reaching his decision. Without the benefit of any indication as to which exemptions apply, plaintiff has had to raise issues on appeal concerning each of the 12 potential exemptions even though appellees have effectively abandoned two of those claims by failing to argue them in their briefs.

As we observed in *Muck*, in which the trial court similarly gave no explanation for its ruling when presented with numerous possible grounds for relief: it could have, and should have, done so. The failure to provide a statement of the basis for the ruling has resulted in a needlessly wasteful expenditure of the resources of the litigants, who have had to argue every possible ground advanced in the trial court. This court, too, has had to review every potential exemption presented below to determine whether there is any ground upon which to affirm the trial court's judgment. We have, nevertheless, decided to address the merits of the appeal rather than return the case to the trial court as we did in *Muck* because any further delay would only add needlessly to the time and expense already expended by the parties and this court.

We have examined the various exemptions which defendants suggest are applicable. We conclude that at least one exemption applies to the entirety of the investigative file and summary and, for that reason, we need not consider other potential exemptions.

■ Section 7(1)(c)(iv) of the Information Act provides an exemption from disclosure for:

"Records compiled by any public body for administrative

enforcement proceedings and any law enforcement or correctional agency for law enforcement purposes or for internal matters of a public body, but only to the extent that disclosure would:

\* \* \*

(iv) unavoidably disclose the identity of a confidential source or confidential information furnished only by the confidential source." 5 ILCS 140/7(1)(c)(iv) (West 1992).

■ Appellant contends that State Police interviewees should not be labeled as confidential sources because confidential sources, in the context of the statute, should be limited only to paid or undercover informants. No authority is cited for this proposition. The United States Supreme Court, in construing a substantively identical provision of the Federal Freedom of Information Act (5 U.S.C. § 552 (1988)) has rejected such an interpretation when applied to sources providing information to the Federal Bureau of Investigation (FBI). In doing so, the court stated that a "source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes." (*United States Department of Justice v. Landano* (1993), 508 U.S. 165, 174, 124 L. Ed. 2d 84, 95-96, 113 S. Ct. 2014, 2020.) While this decision is not controlling, it is certainly persuasive authority, especially when the Illinois act closely parallels Federal law. *Baudin v. City of Crystal Lake* (1989), 192 Ill. App. 3d 530, 536, 548 N.E.2d 1110, 1113-14.

The affidavit of master sergeant King confirms that many of the witnesses were deeply concerned about the confidentiality of the information they were providing to the investigators. In addition, many of the witnesses from within SPD were compelled to cooperate with the State Police investigation under threat of disciplinary action if they did not. None of the witnesses or sources of information consented in writing to disclosure of the information they provided.

In addition, given the nature of the investigation and the relatively limited number of sources of information pertinent to that investigation within the SPD and the local Springfield community, it is readily apparent from an examination of the material in the file that the information provided by each individual interviewee would necessarily result in the disclosure of the identity of that source. For that reason, redaction of the file cannot be meaningfully accomplished.

Copley Press argues, nevertheless, that the broad grant of confidentiality to a potential witness by the State Police creates a loophole large enough to ensure that misconduct in office by public officials need never be disclosed to the public. We disagree. Law

enforcement operations have little hope of being effective if conducted in full public view. (*Raphael v. Aetna Casualty & Surety Co.* (S.D.N.Y. 1990), 744 F. Supp. 71, 74.) Without the grant of confidentiality, the public is less likely to cooperate with an investigation and wrongdoing will go undetected or unsolved. More important is the fact that the benefit of this exemption inures to the source of the information and not the target of the investigation. Copley Press has not suggested that this is either an impermissible or unworthy basis upon which to exempt disclosure.

Because we conclude that section 7(1)(c)(iv) of the Information Act applies to the entire file and the file cannot be meaningfully redacted to avoid the disclosure of either confidential information or sources, we affirm the judgment of the Sangamon County circuit court finding the entire investigative file and summary exempt from disclosure.

Affirmed.

KNECHT, J., concurs.

JUSTICE GREEN, specially concurring:
I concur in the decision of the majority to affirm and in the well-stated reasons for doing so. I write separately only to again express my concern that the language of the majority here, as did the majority in *Muck*, implies that the issues on review from a summary judgment or other judgment based on a question of law are, in some way, dependent upon the reasons cited by the circuit court for its ruling. I expressed similar concern in my dissent in *Muck*, 223 Ill. App. 3d at 837-38, 585 N.E.2d at 1152-53 (Green, P.J., dissenting).

I agree that a statement by the circuit court of its legal reasons for a ruling, including those in regard to a summary judgment, is helpful to the reviewing court, but I am unaware of an Illinois case other than *Muck* holding that these reasons control the issues on review. When the judgment appealed is a summary judgment, the often recognized statement of the supreme court that "[i]n appeals from summary judgment rulings, we conduct a *de novo* review" would seem to be sufficient to answer any contention that the circuit court's reasons delineate issues for review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209.

The *Outboard Marine* opinion called the readers' attention to *Schmolke v. Highland Butterfield, Inc.* (1984), 128 Ill. App. 3d 710, 471 N.E.2d 226, where, in affirming a summary judgment on grounds

428

other than that upon which the circuit court recited as its reasons, the appellate court explained that "[i]n reviewing a trial court's entry of summary judgment, we are not limited to the precise reasons cited by that court in entering summary judgment." *Schmolke*, 128 Ill. App. 3d at 713, 471 N.E.2d at 229.