G. MARK GEKAS, Plaintiff-Appellee and Cross-Appellant, v. NEIL M. WILLIAMSON, in His Official Capacity as Sheriff of Sangamon County, Illinois, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 4—08—0733

Opinion filed July 20, 2009.

John P. Schmidt, State's Attorney, of Springfield (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

John M. Myers (argued), of Rabin, Myers, Schuering & Hanken, P.C., of Springfield, for appellee.

JUSTICE APPLETON delivered the opinion of the court:

Plaintiff, G. Mark Gekas, D.D.S., lodged a complaint with the Sangamon County sheriff's office. He complained that a deputy sheriff, John Gillette, had mistreated him during a traffic stop. The Division of Professional Standards (Division), *i.e.*, the internal-affairs branch of the sheriff's office, performed an investigation and concluded that Gillette had done nothing wrong.

Plaintiff disagreed. He decided to perform an investigation of his own. Pursuant to the Freedom of Information Act (Act) (5 ILCS 140/1 through 11 (West 2006)), he requested the sheriff's office to provide him a copy of all complaints that citizens had made against Gillette, together with all records relevant to those complaints. Defendant, Neil M. Williamson, the sheriff of Sangamon County, refused the request *in toto*. His stated reason for the refusal was that all of the requested records were part of Gillette's personnel file, which, under section 7(1)(b)(ii) of the Act (5 ILCS 140/7(1)(b)(ii) (West 2006)), was exempt from disclosure.

After an unsuccessful administrative appeal, plaintiff sued defendant to compel his compliance with the Act. The circuit court performed an *in camera* inspection of 27 investigative files and concluded that plaintiff was entitled to only 4 of the files. The court allowed defendant to withhold the remaining 23 files either because the Division had found the complaints therein to be unfounded or because the complaints did not resemble the complaint plaintiff had made against Gillette. Defendant appeals from the portion of the order requiring him to disclose the four files. Plaintiff cross-appeals from the portion of the order denying him access to the other 23 files.

We interpret section 7(b)(1)(ii) (5 ILCS 140/7(1)(b)(ii) (West 2006)) as exempting only "personal information" in personnel files. Insomuch as the 23 files document investigations of alleged wrongdoing by Gillette in the course of his public duties, they are not his personal information, and the disclosure of those files would not invade his personal privacy. See 5 ILCS 140/7(1)(b) (West 2006). We know that, at a minimum, the file pertaining to plaintiff's internal-affairs complaint against Gillette falls into this category, and, therefore, the circuit court erred in allowing defendant to withhold it. The same would be true of other files as well, if they related to Gillette's performance of his public duties. See 5 ILCS 140/7(1)(b) (West 2006).

Therefore, we affirm the circuit court's judgment in part and reverse it in part. We affirm the part of the judgment requiring defendant to produce the four files. We reverse the part of the judgment allowing defendant to withhold the file pertaining to plaintiff's allegations against Gillette. We also remand this case with the following directions. Of the remaining files, the court shall identify, and order defendant to provide to plaintiff, all files that relate to allegations of wrongdoing by Gillette in the performance of his duties as deputy sheriff. Pursuant to section 8 (5 ILCS 140/8 (West 2006)), the court shall allow the redaction of exempt information.

## I. BACKGROUND

In his complaint for declaratory judgment and injunctive relief, plaintiff alleges that on August 22, 2006, Gillette "subjected [him] to police brutality *** during a routine traffic stop." Plaintiff complained to defendant in writing. He told defendant that Gillette had stuck a pistol in his face, called him an obscene name, and handcuffed him to the steering wheel of his (plaintiff's) car, knowing, at the time, that plaintiff was in extreme agony from a kidney stone and that, on his doctor's orders, he had been en route to the emergency room of Memorial Medical Center.

On November 20, 2006, plaintiff received a letter from Tony Sacco, chief deputy sheriff, informing him that the Division had investigated his complaint and that "[a]fter reviewing reports[ ] [and] dispatch tapes and interviewing [10] witnesses, [the Division] ha[d] determined [the] complaint to be unsubstantiated." According to Sacco, "Deputy [Sheriff] Gillette [had] performed his duties in accordance with the laws of the State of Illinois and the Sangamon County Sheriff's Office Rules and Regulations."

On November 28, 2006, pursuant to section 3(b) of the Act (5 ILCS 140/3(b) (West 2006)), plaintiff sent defendant a request for information. The request sought the following records:

"[(1)] copies of all materials, including[,] but not limited to[,] reports, dispatch tapes, interview transcripts, interview recordings, and notes and recommendations of your [i]nternal[-][a]ffairs investigator, pertaining to your office's investigation of the complaint of [plaintiff] against Deputy [Sheriff] Gillette;

[(2)] all documents pertaining to alleged or demonstrated steroid use by your deputies;

[(3)] all citizens' complaints against Deputy [Sheriff] Gillette[;] and

[(4)] copies of all materials relating to any prior disciplinary investigation of Deputy [Sheriff] Gillette[ ] and copies of any court documents filed in any litigation involving the conduct of Deputy [Sheriff] Gillette, along with any settlement agreements with respect to such litigation."

On December 12, 2006, on defendant's behalf, Assistant State's Attorney James A. Grohne replied to plaintiff's request for information. Grohne stated:

"With the exception of actual litigation involving Gillette, the information you have requested is exempt under [s]ection 7(1)(a)(ii) of the *** Act. [(Actually, there was no section 7(1)(a)(ii). Grohne evidently meant section 7(1)(b)(ii) (5 ILCS 140/7(1)(b)(ii) (West 2006)), the exemption for 'personnel files and personal information maintained with respect to employees.')]

With respect to litigation, no comprehensive list of litigation involving county employees is maintained. I will, however, search individual files for lawsuits involving Gillette."

In a letter dated December 13, 2006, plaintiff appealed to "the head of the public body," namely, defendant. 5 ILCS 140/10(a) (West 2006). Plaintiff argued in his letter:

"Non[ ]exempt materials cannot be magically transformed into exempt materials by hiding them in a personnel file. Self-evidently, most of the materials sought here pertain to 'public duties' of Mr. Gillette[ ] and[,] more particularly, his performance of those duties. [5 ILCS 140/7(1)(b) (West 2006).] Self-evidently, most of the materials do not invade Mr. Gillette's privacy in any way, shape[,] or form. Materials that do (such as his social security number) can easily be redacted[ ] and the remainder of the materials produced, as required by [s]ection 8 of [the Act (5 ILCS 140/8 (West 2006))]."

On December 15, 2006, defendant denied the appeal. He said that "[t]he Sangamon County Sheriff's Office relie[d] on the advice of the Sangamon County State['s] Attorney in matters of this nature."

Plaintiff requested the circuit court to award him the following relief:

"(a) That the [c]ourt order production by [defendant] of an [i]ndex of [w]ithheld [d]ocuments and a statement of reasons for withholding each document, pursuant to [s]ection 11(e) [(5 ILCS 140/11(e) (West 2006))];

(b) That the [c]ourt conduct an *in camera* inspection of the withheld documents pursuant to [s]ection 11(f) [(5 ILCS 140/11(f) (West 2006))];

(c) That the [c]ourt enter an injunction to prevent [defendant] from withholding public records and \*\*\* ordering the production of all records sought [by] [p]laintiff's \*\*\* request dated December 13, 2006; [and]

(d) That the [c]ourt award [p]laintiff his reasonable attorney's fees and costs pursuant to [s]ection 11(i) [(5 ILCS 140/11(i) (West 2006))]."

In his answer to plaintiff's complaint for declaratory judgment and injunctive relief, defendant again invoked the exemption for personnel files:

"[T]he documents requested in the first paragraph of [plaintiff's] request are related to the internal[-]affairs investigation requested by the [p]laintiff. \*\*\* Clearly, any documents acquired or generated during this process are for determining the propriety of disciplinary action and are[,] thus[,] personnel records[,] which are exempt from disclosure by [s]ection 7(1)(b)(ii) of the Act [(5 ILCS 140/7(1)(b)(ii) (West 2006))].

There are no records relating to the second paragraph of the \*\*\* request[, *i.e.*, records of steroid use by deputy sheriffs].

All documents in paragraph 3 of the \*\*\* request[, *i.e.*, all citizens' complaints against Gillette,] would also be disciplinary records contained in the personnel records and [would be] exempt from disclosure under the above section of the Act.

The documents requested in the first part of paragraph 4 of the \*\*\* request[, *i.e.*, copies of all materials relating to any prior disciplinary investigations of Gillette,] are also disciplinary records contained in the personnel files and[,] thus[, are] protected from disclosure by the above section of the Act. The remaining documents[, *i.e.*, court documents and settlement agreements regarding any conduct by Gillette,] are not maintained by the [s]heriff's [o]ffice but are in files in the possession of third[-]party entities, such as outside counsel or insurance claims adjusters. Notwithstanding this, the Sangamon County State's Attorney['s] [o]ffice is attempting to identify and locate said information as an accommodation to [p]laintiff's attorney."

Along with his answer, defendant filed a motion to dismiss the complaint on the ground of the exemption for personnel files. The circuit court construed the motion for dismissal as a motion for judg-

ment on the pleadings, heard arguments, and on July 3, 2007, ordered defendant to prepare an index of withheld documents. The index revealed that defendant was withholding 27 internal-affairs files.

On June 30, 2008, after performing an *in camera* inspection of the withheld documents, the circuit court entered a docket order requiring defendant to provide plaintiff a copy of 4 of the 27 internal-affairs files. Because of the inadvertent omission of an attached list to which the order made reference, it was impossible to know which four files the court meant. Defendant filed a motion for clarification. On September 5, 2008, the court granted the motion for clarification and on September 12, 2008, filed a final judgment order, which, in its concluding section, stated as follows:

"The [p]laintiff requests copies of *all* of the internal[-]affairs files, and the State claims the statutory exemption from disclosing them[;] plus [it] raises the defense of unwarranted invasion of Deputy [Sheriff] Gillette's personal[-]privacy rights. The applicable statute is not clear and definitive, and the legislative intent is not sufficiently instructive. Neither is the case law [that has been] submitted.

The [c]ourt is left to ponder several questions. Should all internal[-]affairs files be exempt? The answer is indisputably 'no.' If not, what internal[-]affairs files, if any, are *'per se'* exempt? Should all internal[-]affairs files be exempt under the 'confidential source/information rule' enunciated in *Copley Press[, Inc.] v. City of Springfield*[, 266 Ill. App. 3d 421, 639 N.E.2d 913] (1994)? If not, what records, if any, are exempt under this rule? Thus, the [c]ourt was faced with performing a series of balancing tests[,] given that both principles of law and equity can, and do, apply here.

Also, there is another important provision of [s]ection 7: 'The disclosure of information that bears on the public duties of public employees and officials shall *not* be considered an invasion of personal privacy \*\*\*.' [(Emphasis added.) 5 ILCS 140/7(1)(b) (West 2006).]

[Plaintiff] complains of certain of Deputy [Sheriff] Gillette's speech and actions in the course of official public duties. Internal[-]affairs files which are 'unfounded' should be excluded (including [the file pertaining to plaintiff's complaint]) in order to protect the deputy's privacy. It would seem an unwarranted invasion of his privacy right to allow litigants wholesale review of his 'unfounded' internal[-]affairs records. As to 'founded' files, this [c]ourt, using its *in camera* exam[ination], chose those files which include facts closely similar to the type of conduct [plaintiff] complains of in his affidavit [that he sent to the sheriff's office as part of his internal-affairs complaint]. And[,] so, this [c]ourt ordered [four] of Deputy

[Sheriff] Gillette's internal[-]affairs files, and only these [four] files, disclosed to [plaintiff] after redaction of the complainants' names and addresses. The [four] internal[-]affairs cases on Deputy [Sheriff] Gillette are: [Nos.] IA[—]07—24—06A (January 2000), IA[—]06—28—06B (November 1999), IA[—]05—19—06A (July 1999), and IA[—]06—24—04A (April 1998). Obviously, the disciplinary action taken (if any) by [defendant] against Deputy [Sheriff] Gillette, in these [four] instances, is exempt from disclosure under [s]ection 7." (Emphases in original.)

Defendant appeals from the order to disclose the four internal-affairs files. Plaintiff cross-appeals from the finding that the remaining 23 internal-affairs files are exempt from disclosure.

## II. ANALYSIS

### A. General Principles of Statutory Interpretation

We interpret statutes *de novo* (*Country Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 339 Ill. App. 3d 78, 81, 792 N.E.2d 15, 18 (2003)), and our sole objective is to ascertain and give effect to the legislature's intent (*Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 216, 886 N.E.2d 1011, 1021 (2008)). The best evidence of legislative intent is the text of the statute. *Cinkus*, 228 Ill. 2d at 216, 886 N.E.2d at 1021. Except when the statute provides a special definition, we give words their plain and ordinary meaning, including words in the special definitions. *Wahlman v. C. Becker Milling Co.*, 279 Ill. 612, 622, 117 N.E. 140, 144 (1917); *Gerwin v. Livingston County Board*, 345 Ill. App. 3d 352, 361, 802 N.E.2d 410, 417 (2003). We must not deviate from the plain language of the statute by reading into it exceptions, limitations, or conditions that have no basis in the text. *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565-66, 905 N.E.2d 839, 842 (2009). We interpret the statute as a whole, considering each part in the context of other parts. *Cinkus*, 228 Ill. 2d at 216-17, 886 N.E.2d at 1021-22.

### B. An Overview of the Relevant Provisions of the Act

Section 2(a) of the Act defines "public body" to include any executive body (or subsidiary thereof) of a county. 5 ILCS 140/2(a) (West 2006). The parties do not dispute that the Sangamon County sheriff's office meets the definition of a "public body." See 70 Am. Jur. 2d *Sheriffs, Police, & Constables* §2, at 198 (2008) ("the sheriff's office is an agency of the executive branch of government").

■ Section 2(c) defines "public records" as follows:

" 'Public records' means all records, reports, forms, writings, letters, memoranda, books, papers, maps, photographs, microfilms,

cards, tapes, recordings, *** recorded information[,] and all other documentary materials, regardless of physical form or characteristics, having been prepared, or having been *** used, received, possessed[,] or under control of any public body." 5 ILCS 140/2(c) (West 2006).

The report of an investigation by the Division, along with any documentation connected with that investigation, meets the broad definition of "public records," for a public body, namely, the sheriff's office, prepared, used, received, possesses, or controls those materials.

■ Section 3(a) provides: "Each public body shall make available to any person[,] for inspection or copying[,] all public records, except as otherwise provided in [s]ection 7 of this Act [(5 ILCS 140/7 (West 2006))]." 5 ILCS 140/3(a) (West 2006). Thus, a public body must make available, for inspection or copying, all records that fall within the broad definition of "public records" (5 ILCS 140/2(c) (West 2006)) unless section 7 (5 ILCS 140/7 (West 2006)) exempts the record from disclosure. It follows that one cannot resolve a dispute over the accessibility of records simply by referring to the definition of "public records," for section 7 allows a public body to refuse access to some public records.

The public body withholding the records has the burden of proving the applicability of a statutory exemption. *Reppert v. Southern Illinois University*, 375 Ill. App. 3d 502, 506, 874 N.E.2d 905, 908 (2007). We will give the Act a liberal construction in furtherance of the legislative objective of providing easy public access to governmental information, and we will give a narrow construction to the exceptions in section 7 (5 ILCS 140/7 (West 2006)). *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 416-17, 844 N.E.2d 1, 15 (2006).

■ Section 7(1)(b) of the Act (5 ILCS 140/7(1)(b) (West 2006)) begins with a general description of information that is exempt on the ground of personal privacy, and then it provides examples of such information (5 ILCS 140/7(1)(b)(i) through (1)(b)(vi) (West 2006)). We assume the six subsections under section 7(1)(b) consist of information the disclosure of which the legislature deemed to be a clearly unwarranted invasion of personal privacy; otherwise, there would have been no reason to put them in section 7(1)(b). The section reads in part as follows:

"(1) The following shall be exempt from inspection and copying:
***

(b) Information that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of

the information. The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy. Information exempted under this subsection (b) shall include but is not limited to:

\*\*\*

(ii) personnel files and personal information maintained with respect to employees, appointees[,] or elected officials of any public body or applicants for those positions:

\* \* \*

(v) information revealing the identity of persons who file complaints with[,] or provide information to[,] administrative, investigative, law enforcement[,] or penal agencies; provided, however, that identification of witnesses to traffic accidents, traffic accident reports, and rescue reports may be provided by agencies of local government, except in a case for which a criminal investigation is ongoing, without constituting a clearly unwarranted per se invasion of personal privacy under this subsection \*\*\*." 5 ILCS 140/7(1)(b)(ii), (1)(b)(v) (West 2006).

The subsequent subsections of section 7(1), subsections (1)(c) through (1)(qq) (5 ILCS 140/7(1)(c) through (1)(qq) (West 2006)), withhold records on grounds not necessarily limited to privacy. For example, subsection (1)(c) exempts the following records:

"(c) Records compiled by any public body for administrative enforcement proceedings and any law enforcement or correctional agency for law[-]enforcement purposes or for internal matters of a public body, but only to the extent that disclosure would:

(i) interfere with pending or actually and reasonably contemplated law[-]enforcement proceedings conducted by any law[-]enforcement or correctional agency;

(ii) interfere with pending administrative enforcement proceedings conducted by any public body;

(iii) deprive a person of a fair trial or an impartial hearing;

(iv) unavoidably disclose the identity of a confidential source or confidential information furnished only by the confidential source;

(v) disclose unique or specialized investigative techniques other than those generally used and known or disclose internal documents of correctional agencies related to detection, observation or investigation of incidents of crime or misconduct;

(vi) constitute an invasion of personal privacy under subsection (b) of this [s]ection;

(vii) endanger the life or physical safety of law enforcement personnel or any other person; or

(viii) obstruct an ongoing criminal investigation." 5 ILCS 140/7(1)(c) (West 2006).

### C. The Personnel File as a Shelter From Public Scrutiny

As we have explained, section 7(1)(b) (5 ILCS 140/7(1)(b) (West 2006)) begins with a broad description of information that is exempt from disclosure—"[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy"—and then, through a negative definition, it clarifies the concept of an "invasion of personal privacy": "The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy." 5 ILCS 140/7(1)(b) (West 2006). Then subsection (1)(b) provides a nonexclusive list of six items (now seven items since the passage of Public Act 95—988 (Pub. Act 95—988, §10, eff. June 1, 2009 (2008 Ill. Legis. Serv. 2628, 2632 (West))) the disclosure of which, in the legislature's judgment, would "constitute a clearly unwarranted invasion of personal privacy"—items which, therefore, would not "bear[ ] on the public duties of public employees and officials" (5 ILCS 140/7(1)(b) (West 2006). 5 ILCS 140/7(1)(b)(i) through (1)(b)(vi) (West 2006)). The second item in the list, the exemption on which defendant relies, is "personnel files and personal information maintained with respect to employees *** of any public body." 5 ILCS 140/7(1)(b)(ii) (West 2006). As a deputy sheriff of the Sangamon County sheriff's office, Gillette is, of course, an employee of a public body. According to defendant, the investigative reports and related materials that plaintiff seeks are kept in Gillette's personnel file—even the dispatch tapes, it would seem.

The supreme court has forbidden courts to second-guess the legislative determination that disclosing any of the six items in sections 7(1)(b)(i) through (1)(b)(vi) (5 ILCS 140/7(1)(b)(i) through (1)(b)(vi) (West 2006)) would constitute a clearly unwarranted invasion of personal privacy. *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 408, 680 N.E.2d 374, 377 (1997). In *Lieber*, 176 Ill. 2d at 409, 680 N.E.2d at 378, the university argued that the information the plaintiff had requested fell within the exemption in section 7(1)(b)(1) for "personal information maintained with respect to *** students" (5 ILCS 140/7(1)(b)(i) (West 1994)). The supreme court assumed, for the sake of argument, that the information the plaintiff sought was indeed, as the university alleged, personal information maintained with respect to students. On that assumption

(which the supreme court ultimately rejected), the supreme court pointed out an error in the appellate court's analysis:

> "The appellate court was *** wrong to make an individualized assessment of whether disclosure of the information would invade anyone's personal privacy. If the information consisted of personal information maintained with respect to students or other individuals receiving educational services and was therefore covered by the express terms of section 7(1)(b)(i), it would, by definition, constitute '[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy' (5 ILCS 140/7(1)(b) (West 1994)) and be automatically exempt from disclosure." *Lieber*, 176 Ill. 2d at 409-10, 680 N.E.2d at 378.

See *People v. Williams*, 204 Ill. 2d 191, 206, 788 N.E.2d 1126, 1136 (2003) ("Judicial *dicta* have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court").

We do not question the legislative determination that disclosing "personnel files and personal information maintained with respect to employees *** of [a] public body" (5 ILCS 140/7(1)(b)(ii) (West 2006)) would "constitute a clearly unwarranted invasion of personal privacy" (5 ILCS 140/7(1)(b) (West 2006)). Nevertheless, following the lead of the supreme court in *Lieber*, we can and do question whether records of internal-affairs investigations of alleged misconduct by Gillette in the performance of his public duties are his own "personal information." The legislature exempted "personnel files and personal information," as if it considered personnel files to be a repository of personal information. 5 ILCS 140/7(1)(b)(ii) (West 2006); see also *Trombley v. Bellows Falls Union High School District No. 27*, 160 Vt. 101, 108-09, 624 A.2d 857, 862 (1993) (declining to interpret an exemption for "personal documents relating to an individual" (Vt. Stat. Ann. tit. I, §317(c)(7) (2003)) as meaning whatever the agency chooses to put in the personnel file; the documents must be personal in their content). Unlike a performance evaluation, the Division's records are not generated for Gillette's personal use, and they do not concern his personal affairs. What he does in his capacity as a deputy sheriff is not his private business. Whether he used excessive force or otherwise committed misconduct during an investigation or arrest is not his private business. Internal-affairs files that scrutinize what a police officer did by the authority of his or her badge do not have the personal connotations of an employment application, a tax form, or a request for medical leave. Not every scrap of paper that enters a personnel file necessarily is personal information.

In another case considering whether personnel files automatically provided an asylum for public records, we quoted from a decision by the First District: " 'To hold that all information contained in a

personnel file is exempt from public disclosure simply because it is in a personnel file would permit a subversion of the broad purposes of the [Act].' " *Reppert*, 375 Ill. App. 3d at 507, 874 N.E.2d at 909, quoting *CBS, Inc. v. Partee*, 198 Ill. App. 3d 936, 942, 556 N.E.2d 648, 651 (1990). In *Reppert*, 375 Ill. App. 3d at 503, 874 N.E.2d at 906, the plaintiffs sued Southern Illinois University and its chancellor to compel them to comply with the plaintiffs' request for copies of employment contracts of several university employees. The defendants maintained that the employment contracts were exempt from disclosure because they were part of the contracting employees' personnel files. *Reppert*, 375 Ill. App. 3d at 507, 874 N.E.2d at 909. We concluded that the information in the employment contracts met the definition of "public records" (5 ILCS 140/2(c) (West 2004)). *Reppert*, 375 Ill. App. 3d at 506, 874 N.E.2d at 908-09. We further concluded that the contracts were " 'information that [bore] on the public duties of public employees and officials.' " *Reppert*, 375 Ill. App. 3d at 506-07, 874 N.E.2d at 909, quoting 5 ILCS 140/7(1)(b) (West 2004). The defendants conceded that the information in the contracts was not confidential. *Reppert*, 375 Ill. App. 3d at 506, 874 N.E.2d at 909. Because information that related to the public duties of public employees was " 'not [to] be considered an invasion of personal privacy,' " the university had to give the plaintiffs access to the contracts. *Reppert*, 375 Ill. App. 3d at 507, 874 N.E.2d at 909, quoting 5 ILCS 140/7(1)(b) (West 2004). The physical location of the contracts in personnel files did not change the analysis, for "section 8 of the [Act] (5 ILCS 140/8 (West 2004)) explicitly permit[ted] the disclosure of nonexempt documents (such as the employment contracts ***) that [were] contained within exempt public records (such as personnel files)." *Reppert*, 375 Ill. App. 3d at 507, 874 N.E.2d at 909.

Defendant cites cases from other jurisdictions holding that complaints to the internal-affairs office of a law-enforcement agency are exempt from disclosure. *Gannett Co. v. James*, 86 A.D.2d 744, 745, 447 N.Y.S.2d 781, 783 (App. Div. 1982); *Manns v. City of Charleston Police Department*, 209 W. Va. 620, 626, 550 S.E.2d 598, 604 (2001). Our task, however, is to interpret the Act. *Gannett* and *Manns* do not assist us in that task because the Act significantly differs, in its language, definitions, qualifications, and exceptions, from the corresponding statutes in New York and West Virginia. (Also, New York's highest court held that *Gannett* "erred" by using an exemption of personnel records as a blanket exemption of police records. *Capital Newspapers Division of Hearst Corp. v. Burns*, 67 N.Y.2d 562, 569, 496 N.E.2d 665, 669, 505 N.Y.S.2d 576, 580 (1986).)

## D. The Lack of Any Statutory Exemption for Unfounded or Dissimilar Complaints

### 1. *Unfounded Complaints*

■ "The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy." 5 ILCS 140/7(1)(b) (West 2006). To "bear on" a subject means to "be relevant to" that subject (2 New Oxford American Dictionary 141 (2005)) or to have "reference to" or "relate to" that subject (1 Oxford English Dictionary 733 (1970)). "Information" can be true or false. Whether information "bears on" (or is relevant to, relates to, or has reference to) the public duties of public employees depends on the subject matter of the information, not its ultimate accuracy. That a complaint against a deputy sheriff is "unfounded" is nothing more than a conclusion of the sheriff's office: in response to the complaint, the public body investigated itself, or "self-monitored." We should interpret the Act in such a way as to avoid absurd results. See *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 59, 759 N.E.2d 533, 555 (2001). If the Act allowed a public body to deny access to complaints that it deemed to be unfounded, defeating the Act would be as easy as declaring a complaint to be unfounded.

Section 1 of the Act says:

> "Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments[,] and monitoring government to ensure that it is being conducted in the public interest." 5 ILCS 140/1 (West 2006).

To monitor the Sangamon County sheriff's office to ensure it is being conducted in the public interest, citizens might want to see whether the Division is performing a fair and objective investigation of complaints. They might want to see whether complaints that the Division determined to be unfounded are really unfounded. Obviously, citizens cannot perform this critique (which section 1 calls nothing less than the people's "duty") if so-called "unfounded" complaints are exempt from disclosure for the tautological reason that the public body decided they were unfounded. Such an exemption would throw a cloak over potential wrongdoing and insulate officials from political accountability.

The circuit court erred in allowing defendant to withhold "unfounded" complaints of wrongdoing by Gillette in the performance of his duties. Complaints, founded or unfounded, that he committed misconduct in his capacity as a deputy sheriff are "information that bears on [his] public duties," and the disclosure of such information "shall not be considered an invasion of personal privacy." 5 ILCS 140/7(1)(b) (West 2006). Insomuch as these materials, true or false, founded or unfounded, bear on his duties as a police officer, the disclosure of these materials would not invade his personal privacy, and, thus, we do not reach the question of whether their disclosure would be a "clearly unwarranted invasion of [his] personal privacy." 5 ILCS 140/7(1)(b) (West 2006).

## 2. *Dissimilar Complaints*

In its *in camera* inspection of withheld documents, the circuit court found that some of the complaints against Gillette bore no resemblance to plaintiff's complaint against him. The court allowed defendant to withhold the investigative files in which the allegations had no similarity to plaintiff's allegations. The court reasoned that disclosing the dissimilar investigative files would be a clearly unwarranted invasion of Gillette's personal privacy. See 5 ILCS 140/7(1)(b) (West 2006). Again, this rationale was misguided because insomuch as the investigative files related to Gillette's performance of his duties as a deputy sheriff, their disclosure would not invade his personal privacy, let alone be a clearly unwarranted invasion of his personal privacy. See 5 ILCS 140/7(1)(b) (West 2006) ("The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy").

## E. *Expressio Unius Est Exclusio Alterius*

As we have explained, sections 7(1)(b)(i) through (1)(b)(vi) of the Act (5 ILCS 140/7(1)(b)(i) through (1)(b)(vi) (West 2006)) are a nonexclusive list of items the disclosure of which, in the legislature's judgment, would be a "clearly unwarranted invasion of personal privacy." 5 ILCS 140/7(1)(b) (West 2006). The fifth item in the list is as follows:

"(v) information revealing the identity of persons who file complaints with[,] or provide information to[,] *** law enforcement *** agencies; provided, however, that identification of witnesses to traffic accidents, traffic accident reports, and rescue reports may be provided by agencies of local government, except in a case for which a criminal investigation is ongoing, without constituting a clearly unwarranted per se invasion of personal privacy under this subsection." 5 ILCS 140/7(1)(b)(v) (West 2006).

Thus, the statute says that if someone files a complaint with a law-enforcement agency—say, with the internal-affairs office—the agency need not disclose the name of the complainant. *"Expressio unius est exclusio alterius"* is a canon of construction meaning that the expression of one thing is the implied exclusion of the other. Black's Law Dictionary 602 (7th ed. 1999); *In re D.W.*, 214 Ill. 2d 289, 308, 827 N.E.2d 466, 479 (2005). People use this canon of construction in ordinary communication; it is a rule of common sense. The force of the inference from silence depends on whether, under the circumstances, some further expression would have been expected. For example, if someone is asked whether he wishes his bicycle to be sold and he answers, "Do not sell the horn," common sense would suggest it is permissible to sell the bicycle except for the horn, because it would be unexpected and illogical, in such circumstances, for him to specify the horn while failing to mention his objection to selling the rest of the bicycle. Likewise, it would be unexpected and illogical for the legislature, in section 7(1)(b)(v), to specify only its objection to disclosing the name of the complainant if it also objected to disclosing the complaint. *Ergo*, we infer that complaints to the Division are not exempt from disclosure insomuch as they relate to the public duties of an employee or official of that public body.

F. Records Compiled for Internal Matters of a Public Body

Section 7(1)(c) of the Act exempts from disclosure "[r]ecords compiled by any public body *** for internal matters of a public body, but *only* to the extent the disclosure would [have any of the eight adverse effects listed under subsection (c)]." (Emphasis added.) 5 ILCS 140/7(c) (West 2006). Reports of investigations by the Division would seem to fit the description of "[r]ecords compiled by any public body *** for internal matters of a public body." *Copley Press*, 266 Ill. App. 3d at 425-26, 639 N.E.2d at 916 (so characterizing the report of an internal-affairs investigation of the Springfield police department by the Illinois State Police but finding an exemption on the ground of unavoidable disclosure of a confidential source (5 ILCS 140/7(1)(c)(iv) (West 1992))). We are unaware that disclosure of such reports in this case would have any of the adverse effects listed in sections 7(1)(c)(i) through (1)(c)(viii) (5 ILCS 140/7(1)(c)(i) through (1)(c)(viii) (West 2006)). The sixth adverse effect is that disclosure of the records would "constitute an invasion of personal privacy under subsection (b) [(5 ILCS 140/7(1)(b) (West 2006))]." 5 ILCS 140/7(1)(c)(vi) (West 2006). As we already have explained, however, allegations that Gillette committed wrongdoing in the course of his duties is information bearing on his public duties, and according to section 7(1)(b) (5 ILCS 140/

7(1)(b) (West 2006)), the disclosure of such information would not invade his personal privacy.

In sum, because section 7(1)(c) exempts from disclosure "[r]ecords compiled by any public body *** for internal matters of a public body[ ] *only* to the extent that disclosure would [have any of the listed adverse effects]" and because records of the Division's investigations of Gillette's performance apparently would have none of those adverse effects, the records are not exempt from disclosure. (Emphasis added.) 5 ILCS 140/7(1)(c) (West 2006).

## G. The Personnel Record Review Act

Defendant cites section 2 of the Personnel Record Review Act (820 ILCS 40/2 (West 2006)), which provides: "Every employer shall, upon an employee's request[,] *** permit the employee to inspect any personnel documents which are, have been[,] or are intended to be used in determining that employer's qualifications for employment, promotion, transfer, additional compensation, discharge[,] or other disciplinary action ***." Defendant argues that because an investigative report by the Division is intended to be used in determining the employee's eligibility for discharge or other disciplinary action, it is a "personnel record" and, as such, it is properly part of the personnel file, which, under section 7(1)(b)(ii) of the Act (5 ILCS 140/7(1)(b)(ii) (West 2006)), is exempt *per se* from disclosure. See *Copley Press, Inc. v. Board of Education*, 359 Ill. App. 3d 321, 324, 834 N.E.2d 558, 561 (2005) ("we must determine what documents are properly part of a personnel file").

A personnel file can contain various supporting materials that, in themselves, are not personal or private. For example, if a police officer committed misconduct in the course of his or her duties and that misconduct resulted in a judgment against the police officer in a court of law, the employer could, quite sensibly, put a copy of that judgment in the personnel file as documentation supporting the decision to discipline the officer. Surely, filing this quintessentially public document in a personnel file would not make it any the less a public document. The written statement of a witness or an investigative report could go into the personnel file for the same purpose—as supporting documentation for disciplinary action—in which case they would seem analogous to the judgment order. We do not see how Gillette could have a privacy interest in someone's statement of what he did in the public sphere. We do not see how he could have a privacy interest in dispatch tapes, either. The legislature could not have intended the accessibility of public documents, or their private or public nature, to depend on a clerical formality, that is, the public body's choice to store these documents in a personnel file.

Answering the question of whether a document is "properly part of a personnel file" (*Copley*, 359 Ill. App. 3d at 324, 834 N.E.2d at 561) does not necessarily answer the question of whether the document is exempt from disclosure under section 7(1)(b)(ii), for, as we have observed, that section speaks of "personnel files and personal information." 5 ILCS 140/7(1)(b)(ii) (West 2006). We should "evaluate[ ] documents based on their [personal] content rather than [on] where they are filed." *Trombley*, 160 Vt. at 108, 624 A.2d at 862. Section 8 expressly contemplates that a public record exempt from disclosure under section 7 (5 ILCS 140/7 (West 2006)) could contain material that is not exempt. 5 ILCS 140/8 (West 2006); *Reppert*, 357 Ill. App. 3d at 507, 874 N.E.2d at 909. In such a case, "the public body shall delete the information which is exempt" (5 ILCS 140/8 (West 2006)), such as "personal information" (5 ILCS 140/7(1)(b)(ii) (West 2006)), "and make the remaining information available for inspection and copying" (5 ILCS 140/8 (West 2006)). Investigative materials prepared or compiled by the Division are "remaining information" insomuch as they bear on alleged wrongdoing by Gillette in the performance of his duties.

### H. The Supreme Court's Decision in *Stern*

After the parties filed their briefs and made their oral arguments in this case, the supreme court issued its decision in *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396 (2009), which confirms the correctness of our interpretation of section 7(1)(b) of the Act (5 ILCS 140/7(1)(b) (West 2006)), both in *Reppert* and in the present case. In *Stern*, 233 Ill. 2d at 398, the plaintiff requested a school district to provide him the employment contract of the school superintendent. The school district refused to do so because the contract was kept in the school superintendent's personnel file and, therefore, section 7(1)(b)(ii) (5 ILCS 140/7(1)(b)(ii) (West 2006)) exempted the contract from disclosure. *Stern*, 233 Ill. 2d at 400.

Like defendant in the present case, the school district relied heavily on *Lieber* and *Copley*. *Stern*, 233 Ill. 2d at 408-09. The supreme court found *Lieber* and *Copley* to be distinguishable, however, because those cases did not involve a request for an employment contract or a claim by the requester that the information related to a public employer's public duties. *Stern*, 233 Ill. 2d at 410. The supreme court discussed *Reppert* and found our interpretation and analysis of section 7(1)(b) therein to be persuasive. *Stern*, 233 Ill. 2d at 410. Applying *Reppert*, the supreme court held that because the employment contract related to the public duties of the school superintendent, "disclosure of the superintendent's employment contract, and employment

contracts generally, [did] not constitute an invasion of personal privacy for purposes of section 7(1)(b) of the Act and [had to] be disclosed as a matter of law." *Stern*, 233 Ill. 2d at 411-12.

The supreme court further explained:

"The fact that an employment contract may be physically maintained within a public employee's personnel file is insufficient to insulate it from disclosure. If the purpose of the personnel file exemption is to prevent the Act from being used to violate personal privacy, and the Act expressly provides that '[t]he disclosure of information that bears on the public duties of public employees,' such as employment contracts, 'shall not be considered an invasion of personal privacy,' then a contract's physical location within an otherwise exempt record is irrelevant. This conclusion, as the *Reppert* opinion notes, is borne out by section 8 of the Act. [Citation.] *** As this court has observed, the mere 'commingling' of exempt and nonexempt material does not prevent a public body from disclosing the nonexempt portion of the record." *Stern*, 233 Ill. 2d at 412.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment in part and reverse it in part. We affirm the part of the judgment requiring defendant to produce the four internal-affairs files. We reverse the part of the judgment allowing defendant to withhold the file pertaining to plaintiff's allegations against Gillette. We remand this case with the following directions. The court shall identify, and order defendant to provide to plaintiff, each of the remaining files that bears on allegations of misconduct by Gillette in the performance of his duties as a deputy sheriff. The court shall supervise the redaction of exempt information, as it did before.

Affirmed in part and reversed in part; remanded with directions.

STEIGMANN and POPE, JJ., concur.