# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Board of Trustees of the University of Illinois v. Illinois Educational Labor Relations Board, 2012 IL App (4th) 110836**

---

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Petitioner-Appellant, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD and UIC UNITED FACULTY, AFT-IFT, Respondents-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0836 |
| Filed | March 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Educational Labor Relations Board's certification of respondent union as the exclusive representative of a bargaining unit consisting of tenured, tenure-track and nontenured faculty at the Chicago campus of the University of Illinois was reversed on the ground that section 7(a) of the Illinois Educational Labor Relations Act prohibits the inclusion of nontenured faculty in a unit containing tenured and tenure-track faculty. |
| Decision Under Review | Petition for review of order of Illinois Educational Labor Relations Board, No. 11-RC-11-C. |
| Judgment | Reversed. |

| Counsel on Appeal | R. Theodore Clark, Jr., and James J. Powers (argued), both of Clark Baird Smith LLP, of Rosemont, for petitioner. |
| --- | --- |
| | Margaret Angelucci (argued) and Michele Cotrupe, both of Asher, Gittler & D'Alba, Ltd., of Chicago, for respondent UIC United Faculty, AFT-IFT. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Sharon A. Purcell (argued), Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion. Justices Pope and Knecht concurred in the judgment and opinion. |

## OPINION

¶ 1     The Illinois Educational Labor Relations Board (Board) certified UIC United Faculty, AFT-IFT (the union), as the exclusive representative of a bargaining unit consisting of tenured, tenure-track, and nontenured faculty at the Chicago campus of the University of Illinois. The trustees of the university appeal because in their view, the second paragraph of section 7(a) of the Illinois Educational Labor Relations Act (115 ILCS 5/7(a) (West 2010)) forbids the inclusion of nontenured faculty in a unit containing tenured and tenure-track faculty. The legislative history of this ambiguous paragraph of section 7(a) convinces us that the university is correct. Therefore, we reverse the Board's decision.

¶ 2                 I. BACKGROUND

¶ 3     A. The Distinction Between Tenure-System Faculty and Nontenured Faculty

¶ 4     The university employs some 1,200 faculty members at the Chicago campus, not counting the faculty in the colleges of medicine, dentistry, and pharmacy. Of these 1,200 faculty members, 800 are in the tenure system, and 400 are nontenured.

¶ 5     The "tenure system" encompasses tenured faculty, *i.e.*, professors and associate professors, and tenure-track faculty, *i.e.*, assistant professors. Tenured faculty have achieved tenure (basically, lifetime employment), and tenure-track faculty are in a six-year probationary period, in which they are working toward tenure.

¶ 6     Nontenured faculty support the tenured faculty, either through teaching or research, and they are employed pursuant to annual employment contracts that do not automatically renew. Consequently, they have little or no job security, in contrast to the tenured faculty.

¶ 7                    B. The Certification of a Bargaining Unit Containing
                    Both Tenure-System Faculty and Nontenured Faculty

¶ 8      On April 29, 2011, the union filed with the Board a majority-interest petition, in which it sought to represent a proposed bargaining unit, at the Chicago campus, consisting of both tenure-system faculty and nontenured faculty. The union's description of the proposed bargaining unit tracked the language of section 1135.20(b)(1) of the Board's regulations (80 Ill. Adm. Code 1135.20(b)(1) (2012)), which provided:

"(b) With respect to educational employees employed at the Chicago campus or employed in units located outside Chicago which report administratively to the Chicago campus, the following units shall be presumptively appropriate for collective bargaining:

(1) Unit 1: All full-time (i.e., employees who have .51 or greater appointment as a faculty member) tenured or tenure-track faculty; all full-time, nontenure-track faculty who possess a terminal degree appropriate to the academic unit in which the faculty member is employed; and all full-time, nontenure-track faculty without the appropriate terminal degree who have been employed for four consecutive semesters, excluding summer terms, but excluding all faculty members of the College of Pharmacy, the College of Medicine and the College of Dentistry."

¶ 9      On July 12, 2011, after a two-day hearing, an administrative law judge issued a recommended decision certifying the proposed bargaining unit. The university filed exceptions to the recommended decision, and in a final decision on September 15, 2011, a three-member majority of the Board rejected the exceptions, with one board member dissenting. Board of Trustees of the University of Illinois, No. 2011-RC-0011-C (Ill. Educational Labor Relations Bd., Sept. 15, 2011) (unpublished 18-page slip opinion and order). The majority certified the union as the exclusive representative of the following bargaining unit at the Chicago campus:

"INCLUDED: All full-time (i.e., employees who have .51 or greater appointment as a faculty member) tenure or tenure-track faculty; all full-time, nontenure-track faculty who possess a terminal degree appropriate to the academic unit in which the faculty member is employed; and all full-time nontenure-track faculty without the appropriate terminal degree who have been employed for four consecutive semesters, excluding summer terms.

EXCLUDED: All faculty members of the College of Pharmacy, the College of Medicine and the College of Dentistry. All Supervisors, Managerial and Confidential Employees as defined in the 'Act.' "

¶ 10     This appeal followed. See 115 ILCS 5/7(d) (West 2010).


¶ 11                                  II. ANALYSIS

¶ 12              A. The Ambiguity in the Second Paragraph of Section 7(a)

¶ 13     Before certifying the representative of a proposed bargaining unit, the Board must make sure the unit is "appropriate." 115 ILCS 5/7(a) (West 2010). The first paragraph of section 7(a) directs the Board to make case-by-case determinations of the appropriateness of

-3-

proposed bargaining units. In doing so, the Board is to consider "such factors as historical pattern of recognition, community of interest, including employee skills and functions, degree of functional integration, interchangeability and contact among employees, common supervision, wages, hours and other working conditions of the employees involved, and the desires of the employees." *Id.*

¶ 14 When it comes to tenured and tenure-track faculty of the University of Illinois, however, the Board lacks authority to make case-by-case factual determinations of the appropriateness of bargaining units. The second paragraph of section 7(a) (115 ILCS 5/7(a) (West 2010)) withholds that authority from the Board. In lieu of the Board's deciding what will be an appropriate bargaining unit for tenured and tenure-track faculty of the university, the legislature has specified the composition of their appropriate unit. The second paragraph of section 7(a) provides as follows:

> "The sole appropriate bargaining unit for tenured and tenure-track academic faculty at each campus of the University of Illinois shall be a unit that is comprised of non-supervisory academic faculty employed more than half-time and that includes all tenured and tenure-track faculty of that University campus employed by the board of trustees in all of the campus's undergraduate, graduate, and professional schools and degree and non-degree programs (with the exception of the college of medicine, the college of pharmacy, the college of dentistry, the college of law, and the college of veterinary medicine, each of which shall have its own separate unit), regardless of current or historical representation rights or patterns or the application of any other factors. Any decision, rule, or regulation promulgated by the Board to the contrary shall be null and void." 115 ILCS 5/7(a) (West 2010).

¶ 15 The controversy in this case is over the meaning of the first sentence in the above-quoted text, specifically, the two adjective clauses, the "that" clauses, modifying the predicate noun, "a unit." Section 7(a) refers to "a unit that is comprised of non-supervisory academic faculty employed more than half-time and that includes all tenured and tenure-track faculty of that University campus." 115 ILCS 5/7(a) (West 2010). The Board interprets the first adjective clause ("that is comprised of non-supervisory academic faculty employed more than half-time") as describing the whole of the bargaining unit and the second adjective clause ("that includes all tenured and tenure-track faculty of that University campus") as describing only a part of the whole. The university, on the other hand, interprets the second adjective clause as describing the whole of the bargaining unit: it is composed of all the tenured and tenure-track faculty of the campus–and it excludes everyone else.

¶ 16 The Board argues that the university's interpretation suffers from two flaws. First, it contradicts the ordinary meaning of "include." See *Wahlman v. C. Becker Milling Co.*, 279 Ill. 612, 622 (1917) (words in a statute should be given their ordinary meaning unless the statute specially defines them); *Gekas v. Williamson*, 393 Ill. App. 3d 573, 579 (2009) (same). "Include" ordinarily has a different meaning from "comprise." To be "comprised of" means to "be composed of" or to "consist of." New Fowler's Modern English Usage 168 (R.W. Burchfield ed., 3d ed. 1996). "Include," by contrast, means "to take in or comprise *as a part* of a whole." (Emphasis added.) Merriam-Webster's Collegiate Dictionary 587 (10th ed. 2000). It "suggests the containment of something as a constituent, component, or

subordinate part of a larger whole." *Id.* It "indicates a partial list." Black's Law Dictionary 766 (7th ed. 1999). See also *Paxon v. Board of Education of School District No. 87*, 276 Ill. App. 3d 912, 920 (1995) ("We, too, find the word 'including,' in its commonly understood meaning, to be a term of enlargement, not of limitation."); *Puerto Rico Maritime Shipping Authority v. Interstate Commerce Comm'n*, 645 F.2d 1102, 1112 n.26 (D.C. Cir. 1981) ("It is hornbook law that the use of the word 'including' indicates that the specified list *** is illustrative, not exclusive."); New Oxford American Dictionary 859 (2001) (defining "include" as "comprise or contain as part of a whole"); Bill Bryson, Bryson's Dictionary of Troublesome Words 105 (2002) ("[The word 'includes'] indicates that what is to follow is only part of a greater whole. To use it when you are describing a totality is sloppy ***.").

¶ 17    Second, the Board observes that if, as the university contends, both the first adjective clause and the second adjective clause describe the totality of the bargaining unit, it is unclear why two adjective clauses were needed. See *Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 509 (2004) (statutes should be interpreted in such a way that no word, clause, or sentence is rendered superfluous). Surely, the legislature did not deem it necessary to inform the reader that the "tenured and tenure-track academic faculty" to which it referred in the prepositional phrase at the beginning of the sentence were, in the words of the first adjective clause, "academic faculty." If the second adjective clause, like the first, is supposed to describe the totality of the bargaining unit, the legislature could have more easily and more concisely said: "The sole appropriate bargaining unit for tenured and tenure-track academic faculty at each campus of the University of Illinois shall be a unit comprised of all the nonsupervisory tenured and tenure-track faculty of that university campus who are employed more than half-time." But that is not what the legislature said. Instead, in one adjective clause, the legislature referred to the unit's being "comprised of" academic faculty employed more than half-time, and in the other adjective clause, the legislature referred to the "inclusion" of all tenured and tenure-track faculty in the unit. If the legislature intended "includes" to have the same meaning as "is comprised of," it is unclear why the legislature used both verbs in side-by-side clauses modifying the same predicate noun. The natural inference is that the legislature intended the two verbs, "comprised" and "includes," to have different meanings.

¶ 18    Even so, the university argues that the Board's interpretation has a couple of problems as well. First, the university suggests that giving the word "includes" its plain meaning–as signifying "a subset of a larger universe of possible items"–would reduce the sentence to a tautology. The university explains:

"The problem with the Board's interpretation is that it merely states the obvious–*of course* tenured and tenure-track faculty will belong to a tenured and tenure-track bargaining unit. Otherwise, it would not be a 'tenured and tenure-track' unit! In this regard, the Board's interpretation of 'includes' as the containment of something as a constituent, component, or subordinate part of a larger whole makes no sense, because the subject and object of the sentence are identical.

Did the General Assembly truly believe, as the Board implicitly argues, that one might overlook the inclusion of 'tenured and tenure-track' faculty when crafting the sole appropriate bargaining unit for 'tenured and tenure-track faculty?' Such an assertion is

-5-

nonsensical. Therefore, the Board's interpretation effectively renders the second phrase 'includes tenured and tenure-track faculty' superfluous, which is prohibited when interpreting statutory language. *See Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 509 (2004) (statutes must be interpreted 'so that each word, clause, or sentence is given reasonable meaning and not deemed superfluous or void')." (Emphasis in original.)

¶ 19        It is true that when interpreting a statute, we should strive to give effect to each word. In its argument, however, the university violates that rule of construction by overlooking the modifiers that precede and follow "tenured and tenure-track faculty of that University campus." To be sure, the following statement–which is shorn of significant modifiers–would be a tautology: "The sole appropriate bargaining unit for tenured and tenure-track academic faculty at each campus shall be a unit that includes tenured and tenure-track faculty of that university campus." But that is not what the statute says. Instead, the statute says:

> "The sole appropriate bargaining unit for tenured and tenure-track academic faculty at each campus *** shall be a unit *** that includes *all* tenured and tenure-track faculty of that University campus *employed by the board of trustees in all of the campus's undergraduate, graduate, and professional schools and degree and non-degree programs ***.*" (Emphases added.) 115 ILCS 5/7(a) (West 2010).

The adjective "all" and the participial phrase "employed by the board of trustees in all of the campus's undergraduate, graduate, and professional schools and degree and non-degree programs" prevent the use of "includes," in its ordinary sense, from resulting in a tautology. By these modifiers, the legislature put a limit on the fragmentation of tenured and tenure-track faculty into separate bargaining units. The tenured and tenure-track faculty at each campus shall not be fragmented into a unit for the sciences and a unit for the humanities, for example, or into a unit for graduate programs and a unit for undergraduate programs. The only permissible intercampus fragmentation of tenured and tenure-track faculty is expressed in the parentheses in section 7(a) ("(with the exception of the college of medicine, the college of pharmacy, the college of dentistry, the college of law, and the college of veterinary medicine, each of which shall have its own separate unit)"). 115 ILCS 5/7(a) (West 2010). So, contrary to the university's argument, allowing "include" to have its plain meaning, as "indicat[ing] a partial list" (Black's Law Dictionary 766 (7th ed. 1999)), would not result in a tautology.

¶ 20        Nevertheless, the second criticism that the university makes against the Board's interpretation is a valid one. In the Board's interpretation, the sentence in question sets out to describe "*[t]he sole* appropriate bargaining unit"–that is, the one and only appropriate bargaining unit–"for tenured and tenure-track academic faculty at each campus of the University of Illinois," but then the sentence ends up describing, in the subject complement, a type of bargaining unit of which there could be multiple exemplars: "a unit that is comprised of non-supervisory academic faculty employed more than half-time and that includes all tenured and tenure-track faculty of that University campus." (Emphasis added.) 115 ILCS 5/7(a) (West 2010). Thus, "[t]he sole appropriate bargaining unit" is a unit that is composed of nonsupervisory faculty employed more than half-time. Because the statute does not say "a unit that is comprised of *all* nonsupervisory faculty employed more than half-time," different compositions of bargaining units could meet the description: for example,

all full-time faculty; or only those full-time faculty members who have terminal degrees; or only those full-time faculty members who either have terminal degrees or who are clinical professors (the list could go on). So, after setting out to describe "[t]he sole appropriate bargaining unit," the statute provides a description to which multiple theoretical bargaining units, of differing compositions, could conform–as if to say, "The sole appropriate bargaining unit is A or B or C, et cetera: take your pick."

¶ 21     The university proposes an interpretation that would make this conflict between the complete subject ("[t]he sole appropriate bargaining unit") and the subject complement go away. The university interprets the verb "includes," in the second adjective clause, as being "restrictive": "that includes all tenured and tenure-track faculty of that University campus"–and no one else. 115 ILCS 5/7(a) (West 2010). In other words, "includes" means "is comprised of," in the university's interpretation. There could be only one bargaining unit *comprised of* all the nonsupervisory tenured and tenure-track faculty employed more than half-time at a campus.

¶ 22     In sum, something can be said for and against the university's interpretation, just as something can be said for and against the Board's interpretation. On the one hand, the university cures the conflict between the complete subject ("[t]he sole bargaining unit") and the subject complement ("a unit that is comprised of non-supervisory academic faculty employed more than half-time and that includes all tenured and tenure-track faculty of that University campus")–but at the price of redefining "includes" to mean "is comprised of" even though, improbably for such an interpretation, the legislature uses the construction "is comprised of" in the immediately preceding adjective clause. The Board, on the other hand, is faithful to the ordinary meaning of the two adjective clauses, including the word "includes"–but at the price of accepting a conflict between the complete subject and the subject complement. No matter which of the two interpretations one chooses, one ends up sacrificing some language in the statutory text. Consequently, we hold that the second paragraph of section 7(a) is ambiguous.

¶ 23                              B. Legislative History

¶ 24     If the legislature has given an agency the responsibility of administering a statute and if the statute is ambiguous, a court should not simply interpret the statute on its own, as the court would do in the absence of an administrative interpretation; rather, the court should defer to the agency's interpretation if the interpretation is reasonably defensible. *Quality Saw & Seal, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 776, 782 (2007); *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 657 (2005). In the words of the Supreme Court, "if the statute is *** ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984).

¶ 25     The agency in this case is, of course, the Illinois Educational Labor Relations Board, which, in the decision under appeal, has construed a statute that the legislature has given it the responsibility to administer, the Illinois Educational Labor Relations Act (115 ILCS 5/1

to 21 (West 2010)). See 115 ILCS 5/5(i) (West 2010). A provision of that statute, the second paragraph of section 7(a) (115 ILCS 5/7(a) (West 2010)), is ambiguous for the reasons we have explained. We consider the Board's interpretation of this ambiguous provision to be reasonable in light of the statutory language. The university's interpretation likewise is reasonable. Our duty of deference would tilt the scales in the Board's favor if the text of the current version of the statute were all that we considered. Because the statute, however, is ambiguous, we may consider legislative history (see *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 607 (2008)), and as we will explain, the legislative history clearly forecloses the Board's interpretation of section 7(a) (see *Chemical Manufacturers Ass'n v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 126 (1985)).

¶ 26                                    1. *Public Act 89-4*

¶ 27      Before 1996, section 7(a) of the Illinois Educational Labor Relations Act consisted of a single paragraph, which was nearly identical to the first paragraph of section 7(a) in its present form. Effective January 1, 1996, Public Act 89-4 (Pub. Act 89-4, § 50-243 (eff. Jan. 1, 1996) (1995 Ill. Laws 14, 239)) added a second paragraph to section 7(a), and this second paragraph (unlike the current version of the second paragraph) provided that the only appropriate bargaining unit for faculty of the University of Illinois was a unit that "included" all the tenured, tenure-track, and nontenure-track faculty of the university. The paragraph added by Public Act 89-4 read as follows:

> "The sole appropriate bargaining unit for academic faculty at the University of Illinois shall be a unit that is comprised of non-supervisory academic faculty employed more than half-time and that includes all tenured, tenure-track, and nontenure-track faculty employed by the board of trustees of that University in all of its undergraduate, graduate, and professional schools and degree and non-degree programs, regardless of current or historical representation rights or patterns or the application of any other factors. Any decision, rule, or regulation, promulgated by the Board to the contrary shall be null and void." 115 ILCS 5/7(a) (West 1996).

¶ 28      The grammatical structure of this quoted paragraph should be familiar by now: the complete subject ("[t]he sole appropriate bargaining unit"), an auxiliary verb and linking verb ("shall be"), and the predicate noun ("a unit"), followed by two restrictive adjective clauses ("that is comprised of non-supervisory academic faculty employed more than half-time and that includes all tenured, tenure-track, and nontenure-track faculty"). As in the present form of section 7(a), the first adjective clause used the verb "is comprised," and the second adjective clause used the verb "includes."

¶ 29      But look at the second adjective clause: it refers to "all tenured, tenure-track, and nontenure-track faculty." What other kinds of "academic faculty" are there? There are no others. These three categories are an exhaustive description of the faculty of the University of Illinois–and they are the direct object of "includes." Consequently, in this earlier version of the second paragraph of section 7(a), "includes" evidently did not mean "the containment of something as a constituent, component, or subordinate part of a larger whole." Merriam-Webster's Collegiate Dictionary 587 (10th ed. 2000). Rather, "includes" was synonymous

with "is comprised of." See New Oxford American Dictionary 859 (2001) ("*Include can be used in [the same] way [as comprise]*, but it is also used in a nonrestrictive way, implying that there may be other things not specifically mentioned that are part of the same category." (Emphasis added.)); New Fowler's Modern English Usage 387 (R.W. Burchfield ed., 3d ed. 1996) ("With *include*, there is no presumption (*though it is often the fact*) that all or even most of the components were mentioned \*\*\*." (Emphasis in original and added.)).

¶ 30                                    2. *Public Act 93-445*

¶ 31        Effective January 1, 2004, Public Act 93-445 (Pub. Act 93-445, § 5 (eff. Jan. 1, 2004) (2003 Ill. Laws 3098, 3099)) amended the second paragraph of section 7(a) so that it no longer described the appropriate bargaining unit for the entire "academic faculty" of the University of Illinois as a whole but instead described the appropriate unit for "tenured and tenure-track academic faculty" at each campus of the university. We will indicate the additions by underlining and the deletions by strikeout:

> "The sole appropriate bargaining unit for tenured and tenure-track academic faculty at each campus of the University of Illinois shall be a unit that is comprised of non-supervisory academic faculty employed more than half-time and that includes all tenured and, tenure-track, and nontenure track faculty of that University campus employed by the board of trustees of that University in all of the campus's its undergraduate, graduate, and professional schools and degree and non-degree programs (with the exception of the college of medicine, the college of pharmacy, the college of dentistry, the college of law, and the college of veterinary medicine, each of which shall have its own separate unit), regardless of current or historical representation rights or patterns or the application of any other factors. Any decision, rule, or regulation, promulgated by the Board to the contrary shall be null and void." Pub. Act 93-445, § 5 (eff. Jan. 1, 2004).

¶ 32        As the university points out, the amendment of a statute typically evinces a legislative intention to change the law, not to keep the law as it is. "[T]he normal presumption is that an amendment is intended to change the law as it formerly existed, rather than to reaffirm it \*\*\*." *Saltiel v. Olsen*, 77 Ill. 2d 23, 29 (1979). See also *KSAC Corp. v. Recycle Free, Inc.*, 364 Ill. App. 3d 593, 597 (2006) ("[W]hen the General Assembly amends a statute by deleting certain language, it is presumed to have intended to change the law in that respect."). Conversely, logic would suggest that, to the extent the amendment leaves words in the statute unchanged, the legislature must have intended those words to have the same meaning as before. Therefore, "includes" has the same meaning in the current version of section 7(a) as it had in the previous version: it means "is comprised of," signifying a complete list of the "academic faculty" in "[t]he sole appropriate bargaining unit." By deleting the words "and nontenure-track" from the second adjective clause, the legislature presumably intended to change the law by providing that the sole appropriate bargaining unit for tenured and tenure-track faculty of a campus would consist only of the tenured and tenure-track faculty of that campus.

¶ 33        The remarks of Senator Maloney during the third reading of Senate Bill 1360 strengthen this presumption. See *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 398 (2003) (legislative

history and debates are valuable aids in the interpretation of an ambiguous statute); *Illinois Native American Bar Ass'n (INABA) v. University of Illinois*, 368 Ill. App. 3d 321, 327 (2006) ("The statements of a bill's sponsor matter when determining legislative intent."). Senator Maloney sponsored Senate Bill 1360, which became Public Act 93-445. He explained to his colleagues in the Senate: "Senate Bill 1360 gives the option to tenure and tenure-track faculty under the auspices of the University of Illinois–that is the campuses at Springfield, Urbana-Champaign and Chicago–the choice of whether or not they want to form a collective bargaining unit." 93d Ill. Gen. Assem., Senate Proceedings, Apr. 4, 2003, at 112 (statements of Senator Maloney). Again he said: "It–it allows the full-time tenure and tenure-track faculty at each of the campuses the option of whether or not they want to form a collective bargaining unit." *Id.* at 113. Thus, the topic of discussion was the formation of bargaining units by tenured and tenure-track faculty at each campus of the University of Illinois. If the senators had contemplated that nontenure-track faculty would be in the bargaining units as well, it is unclear why they would have discussed only the formation of such units by tenured and tenure-track faculty.

¶ 34        Therefore, even though the Board's and the university's interpretations of the second paragraph of section 7(a) (115 ILCS 5/7(a) (West 2010)) seem equally reasonable when one considers only the ambiguous text of the statute, the legislative history and the discussion on the Senate floor–but especially the legislative history–clearly show that the Board's interpretation is contrary to the legislative intent. The legislature apparently intended that the sole appropriate bargaining unit for tenured and tenure-track faculty at each campus of the University of Illinois would be comprised exclusively of all the nonsupervisory tenured and tenure-track faculty at the campus who were employed more than half-time (except for the college of medicine, the college of pharmacy, the college of dentistry, the college of law, and the college of veterinary medicine, each of which would have its own separate unit) and that nontenure-track faculty would be excluded from the unit. Because section 1135.20(b)(1) of the Board's regulations (80 Ill. Adm. Code 1135.20(b)(1) (2012)) contradicts section 7(a) in that respect, section 1135.20(b)(1) is "null and void." 115 ILCS 5/7(a) (West 2010).

¶ 35                                        III. CONCLUSION
¶ 36        For the foregoing reasons, we reverse the Board's decision.

¶ 37        Reversed.